[Civ. No. 2393.    Third Appellate District.—March 19, 1923.]

## DAISY COURVIOSIER, Respondent, v. ARTHUR I. BURGER, Appellant.

[1] Negligence—Automobile Accident—Conflicting Evidence—Verdict—Appeal.—In this action for damages for personal injuries received as the result of having been struck and run over by defendant's automobile, to the extent that defendant's story conflicted with that of plaintiff it was a matter entirely for the

---

1. Reciprocal duty of operator of automobile and pedestrian to use care, notes, 4 Ann. Cas. 400; Ann. Cas. 1916E, 661; 9 A. L. R. 1248; 38 L. R. A. (N. S.) 487; 42 L. R. A. (N. S.) 1179; 51 L. R. A. (N. S.) 990.

determination of the jury, and as the appellate court could not say that the testimony imputing negligence to defendant was unworthy of belief, it was bound by the determination of the jury that the accident was due to the negligence of defendant.

[2] Id.—Contributory Negligence—Instructions—Verdict.—In such action, it was proper for the court to give a hypothetical instruction on the subject of contributory negligence, based upon the testimony of defendant, but the jury having discredited his testimony and accepted that of plaintiff's witnesses, it did not commit error in finding a verdict in favor of plaintiff.

[3] Id.—Duty of Automobile Driver—Instructions—Evidence.—In this action, the instructions of the court embodied a correct general statement of the duty of the driver of an automobile; and under the circumstances disclosed in the case, particularly the facts that defendant saw plaintiff and knew her attention was not directed to the machine until it was within five or six feet of her, he was negligent in failing to sound the horn and in failing to stop his machine when he realized that the danger was so imminent.

[4] Id.—Exercise of Care by Plaintiff—Evidence.—Notwithstanding a few of plaintiff's statements were somewhat uncertain and obscure, a fair and just inference from her testimony having been that she was crossing the street in the place allotted to and ordinarily used by pedestrians, and that before leaving the sidewalk she carefully looked up and down the street and saw no vehicles approaching, that was all she was required to do before proceeding on her way, and the movement she made after she became aware of the proximity of defendant's machine having been such as was likely to promote her safety, it was for the jury to say whether she acted with due caution and circumspection.

[5] Id.—Sudden Peril—Care Required.—Under circumstances of sudden and terrifying peril produced by another, a person is not held to the same strict accountability as in positions more favorable for the exercise of deliberate and accurate judgment.

[6] Id.—Typographical Error—Amendment at Time of Trial.—Plaintiff, in her original complaint, having by mistake stated that she was walking from the northeast corner of certain specified intersecting streets to the "southeast" corner thereof, instead of to the "northwest" corner, the trial court did not commit error in granting her request, made when the case was called for trial, to amend her complaint to correct the error.

[7] Id.—Nonsuit—Argument—Making in Presence of Jury—Instructions.—The trial court did not abuse its discretion by refusing to hear argument upon defendant's motion for nonsuit or by requiring the motion to be made with the jury present; and if it was thought by defendant that the jurors might be inclined to consider the circumstances as an indication of the judge's opinion

in favor of plaintiff and hence might be more readily induced to find a verdict for her, he should have requested an instruction to meet the situation.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles Gilmore for Appellant.

Ray T. Coughlin and Marco S. Zarick for Respondent.

BURNETT, J.—The action was for damages caused by the alleged negligent operation of an automobile by defendant whereby plaintiff was run over and severely injured and she was awarded a verdict of three thousand dollars by the trial jury. The appeal is from the judgment entered thereon in her favor. As to the circumstances of the accident, which occurred on Eighth Street, Sacramento, plaintiff testified as follows:

"I was prepared to go to work, and I was going to the Post Office, down K Street, going towards the Post Office. I walked on a straight line from the sidewalk, about the center of K Street. As I crossed 8th Street, until I reached about six or seven feet from K Street, on 8th, I heard a noise suddenly to my left; so I turned, I saw the car almost on me, so near I could not tell whether it was a car or truck, it was so close to me; just as I swung back, Mr. Burger turned the car away from me immediately, and immediately back on me; he turned away and started back on me; my first temptation was—when I turned around, I sprung back, I bumped into a woman behind me— she would have been struck if I hadn't. As he turned away from me, he suddenly backed on me immediately and knocked me down and the front wheel, right hand, ran over both of my limbs. . . . It was coming direct for me and I sprang back; as I sprung back the front wheel turned direct away from me, and direct back on me. . . . I sprang back as far as,—until I struck somebody—seemed kind it swung away, started back, turned around, swung back on me, knocked me down, ran over me."

The record also shows the following questions and answers:

"Q. When you stepped off, Mrs. Courviosier, to cross the street, did you look up and down the street both? A. I always do, yes; I did. Q. You looked up and down 8th Street? A. Yes. Just as I said, then this car came around, almost ran around the policeman about from K Street on 8th Street, so rapidly, right on the corner, what I heard was the noise closer. Q. You saw him round the policeman? A. No, I did not; I was looking straight ahead; it was perfectly clear when I crossed over. Q. Did you look to the right and left? A. Not any distance, except in front of me. Q. You did not look to the right or left, but was looking straight ahead? A. I looked, except the distance, I know I was the distance before—I saw nothing coming either way. I could have crossed the street if it hadn't come so suddenly. . . . Q. Did the automobile continue on past the corner, or stop at the time it ran over you? A. He stopped; for the first time, he blew the horn; when he was over me he blew the horn for the first time."

Mrs. Carrie Tobin, who was crossing the street just behind plaintiff, testified:

"I was walking—just walked off the sidewalk, right in front of the S. P. Building; Mrs. Courviosier was just a step or two ahead of me, and proceeded,—the machine came up around, started to come around the intersection very quick, Mrs. Courviosier was hit; she was five or six feet from the sidewalk, a step or two ahead of me. The machine came up so quick, knocked her down and went over her body; I did not hear the horn toot until it was on top of Mrs. Courviosier. . . . Q. Did you notice how the machine was operated, was there anything about that specially, either about the man or the way he managed the machine? A. Yes, the machine zigzagged a couple of times; he turned the machine—she stepped back—he turned it again, turned it right in front of her, and deliberately knocked her down."

It may be added that both of these witnesses testified to declarations in reference to the accident which they claim to have heard the defendant make.

According to plaintiff, the defendant, while at the hospital, "said he was so rattled he did not know what he was doing; he turned around, he was so rattled he did not

know what he was doing; that is what he told me in the hospital.''

Mrs. Tobin testified:

''There were two gentlemen sitting in the corner of the Receiving Hospital there; I made the remark that the gentleman did not blow his horn until he was on top of her; I did not know who Mr. Burger was; he stepped up, he said 'I beg your pardon, lady, I did not toot my horn at all'; he made the statement in the Hospital.''

Although Mr. Burger was a witness at the trial he made no denial of these statements; in fact, he was not interrogated concerning them. He did, however, as might be expected, give a different account of the accident. [1] According to his version the collision was entirely due to the negligent act of plaintiff in stepping backward in front of the truck. To the extent, though, that his story conflicted with that of plaintiff it was a matter entirely for the determination of the jury and, of course, the finding is binding upon us, since we cannot say that the testimony imputing negligence to defendant is unworthy of belief.

[2] The main contention of appellant is that the evidence shows without conflict that plaintiff is chargeable with contributory negligence, and that the verdict would and should have been in favor of defendant if the jury had given due heed to the following instruction of the trial court:

''If you believe from the evidence that at the time of the accident, the defendant, Burger, was driving his motor-truck in a careful and prudent manner and if the jury further believes from the evidence that the defendant Burger saw the plaintiff in front of him and that she was then walking to his left and out of the path of the automobile and not in a line directly in front of said automobile, the said Burger had the right to assume that the plaintiff would continue on in the same direction in which she was then going and had the right to assume that she would not stop or hesitate or run backwards so as to be in front of the motor-truck, and you are further instructed that if you believe from the evidence that the plaintiff, Daisy C. Courviosier, did stop or hesitate or run backwards and so placed herself in front of the motor-truck and in a position of danger, then she was guilty of contributory negligence as will defeat

her right of action herein and your verdict should be for the defendant.''

In answer to this contention it is deemed proper to state that this hypothetical instruction was based upon the testimony of defendant and it was proper for the court to so present defendant's theory of the case, but the jurors discredited his testimony and accepted that of plaintiff's witnesses. The question is, then, whether the testimony, which seems to have carried conviction to their minds, is legally sufficient to support the view that defendant was negligent, that such negligence was the proximate cause of the injury and that plaintiff acted as an ordinarily prudent person would act under the circumstances. We think there can be no kind of doubt that these questions must be answered favorably to respondent.

[3] There is no controversy as to the general statement of the duty of the driver of an automobile embodied in the following instructions of the trial court:

''The driver of the automobile was under the legal duty to use reasonable care to avoid colliding with other vehicles or persons in the public highway. His duty was to be on the alert to observe persons who were in the street or about to cross the street and to use reasonable care to avoid colliding with them. He was under an obligation to take notice of the conditions existing in the public street and to propel his car in a manner suitable to those conditions. He was under a duty to observe the condition which existed at the cross-walk. The defendant should, as he approached the cross-walk, have kept a careful watch ahead to avoid injury to pedestrians using the cross-walk. The driver of the motor vehicle in this case, at the time and place in question, was required to maintain such control of his machine that on the shortest notice he could stop it so as to prevent injury to pedestrians.

''When one crossing a street at the proper place becomes confused and vacillates as to the course he or she shall pursue, reasonable care may require that the driver stop his automobile in order to avoid the collision.''

This duty of the driver in the present case is emphasized by the consideration that he was using a city street crowded with traffic and thronged with pedestrians. He had also just changed his course of travel from K to Eighth Street,

which involved a situation of increased peril to pedestrians crossing the latter street. Giving full credit, as we must, to plaintiff's testimony, we find defendant in this situation: He turned into Eighth Street without giving any audible signal to call attention to the change in his course, he approached the crossing with the same omission, notwithstanding plaintiff was proceeding across the street in the accustomed place and unaware of his approach until the automobile was within a few feet of her. If he had been alert he could have seen she was oblivious of the impending danger. Indeed, the evidence—his own testimony, in fact—justifies the inference that he did see the plaintiff and that he knew her attention was not directed to the machine until it was within five or six feet of her. Under these circumstances, he was negligent, of course, in failing to sound the horn, and, moreover, common prudence and proper regard for human safety would direct him to stop his machine when he realized that the danger was so imminent. Besides, there is support for the theory that he was actively and aggressively negligent and even reckless in his management of the machine after he discovered the danger, or, as characterized by the witnesses, he became "rattled," "zigzagged" the truck and seemed deliberately to pursue the plaintiff.

That the testimony which we have quoted shows a case of negligence on the part of defendant cannot be gainsaid, and, manifestly, that negligence contributed proximately to the accident. This latter proposition is not disputed and, indeed, is so self-evident as not to admit of candid discussion.

[4] The question remains whether plaintiff, according to her own story, was so incautious and imprudent as to preclude recovery. We are satisfied that the jury was entirely warranted in finding that she did all that the law or enlightened conscience required. A few of her statements appear somewhat uncertain and obscure, but this is not surprising, in view of her unfamiliarity with court proceedings and the stress and excitement of the occasion of the accident. A fair and just inference from her testimony is, however, that she was crossing the street in the place allotted to and ordinarily used by pedestrians; that before leaving the sidewalk she carefully looked up and

down the street, that is, she looked south and north on Eighth Street and saw no vehicle approaching. This is all that she was required to do before proceeding on her way. It could not be claimed with any reason that she should have looked up and down K Street in anticipation that a vehicle might turn from that street into Eighth Street. If that duty were imposed upon a pedestrian it is easy to see that he might be kept waiting during all the busy hours of the day. When she saw no one approaching she was entirely warranted in pursuing her journey, assuming that if anyone turned from K into Eighth before she crossed he would give her timely warning of his approach. Manifestly, she could not go forward with safety if she were required to watch constantly for vehicles that might change their course at right angles. Nor does her testimony reveal any want of proper care after she became aware of the proximity of the machine of defendant. It appears that the movement she made was likely to promote her safety, and in all probability would have enabled her to avoid the machine had it not been for the eccentric action of the defendant. [5] Besides, the rule is that under circumstances of such sudden and terrifying peril produced by another the injured person is not held to the same strict accountability as in positions more favorable for the exercise of deliberate and accurate judgment. (*Scott* v. *San Bernardino Valley etc. Co.*, 152 Cal. 604 [93 Pac. 677].) At any rate, it was for the jury to say whether she acted with due caution and circumspection.

As before indicated, there is some sanction for the application of the doctrine of the "last clear chance" or wanton indifference, but it is deemed sufficient to base the decision upon the other ground.

The cases cited by appellant are not opposed to the conclusion we have reached.

In *Cawley* v. *La Cross City Ry. Co.*, 101 Wis 145 [77 N. W. 179], it was held that the failure of a person to look and listen and to see and hear an approaching car if within plain view and hearing is negligence *per se*. Therein the plaintiff was injured while attempting to cross a railroad track and the court adhered to the well-established rule that in this class of cases, for reasons which need not be repeated, such duty is inflexible. It may be added that

additionally the court held that there was no ground for charging the defendant with negligence at all.

In *Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474 [186 Pac. 631], the plaintiff stepped from the sidewalk into the street without looking for the approach of vehicles. Therein it was said by the court: "Giving to plaintiff's evidence all the value to which it is legally entitled and resolving every reasonable inference which may be drawn therefrom in favor of plaintiff, the inevitable conclusion must be that plaintiff left his place of safety on the sidewalk and stepped directly into the path of the moving automobile." That such conduct was negligence, and that of the grossest kind, on the part of the plaintiff, is, of course, incontrovertible.

No fault can be found with the doctrine announced in *Sheldon* v. *James,* 175 Cal. 474 [2 A. L. R. 1493, 166 Pac. 8], that it is the duty of a pedestrian "to look to the right and to the left whenever he has voluntarily put himself in a position which may be one of peril coming from either direction and in particular when he has received adequate warning of the likelihood of peril." In that case the plaintiff did not look, although he was warned by a "loud and raucous" noise from the machine which was backing toward him.

The case of *Beeler* v. *Atchison, T. & S. F. Ry. Co.*, 107 Kan. 522 [192 Pac. 741], was decided upon the ground of the insufficiency of the evidence to show negligence on the part of the defendant, and in commenting upon that consideration the court very properly said that "it was not within the province of the jury to indulge in mere conjecture and speculation for the purpose of finding negligence," and the conclusion was reached that the verdict of the jury must have been based upon mere conjecture, since there was no substantial evidence of the want of proper care in the shipment of certain animals.

In *Scott* v. *San Bernardino Valley etc. Co.*, 152 Cal. 604 [93 Pac. 677], the judgment in favor of the plaintiff was affirmed, although there was a failure on the part of Scott to observe "the car standing at the corner ready to start at the time he started to make the turn." The opinion contains an interesting discussion of the correlative duties of the motorman and of the driver of the vehicle that was struck, concerning which there can be no difference of opin-

ion. The case is, however, in point only to the extent that it involved the general principles of negligence.

*Wheelahan* v. *Philadelphia Traction Co.*, 150 Pa. St. 187 [24 Atl. 688], was the case of a driver of a vehicle attempting to cross a street-car track upon which a car was approaching, and it was properly held that the failure of the plaintiff to lean forward so as to prevent the hood on his wagon from obstructing or limiting his view was negligence preventing recovery.

*Carson* v. *Federal Street & Pleasant Valley Ry. Co.*, 147 Pa. St. 219 [30 Am St. Rep. 727, 15 L. R. A. 257, 23 Atl. 369], also involved the crossing of a street-car track and the application of the familiar rule requiring one to look and listen so as to avoid walking or driving directly in front of a moving car.

We may conclude the consideration of this branch of the case with a reference to the decision of the New York court of appeals in *Baker* v. *Close*, 204 N. Y. 92 [38 L. R. A. (N. S.) 487, 97 N. E. 501], wherein is pointed out the distinction between a case of this character and one involving a collision "at grade street crossing of a steam railroad." As to the latter it is said the duty is inflexible for the wayfarer "to look both ways, to listen and, if necessary, to stop," but "it is different, however, as to the rights and duties of pedestrians and drivers in the use of crossings on our city streets. There the right of passage is common to all, and both footmen and drivers are bound to exercise reasonable care for their own safety and the safety of others upon the street. The rigorous rule applicable to steam railroad crossings is necessarily relaxed, and the footman is not required as matter of law, to look both ways and listen; but only to exercise such reasonable care as the case requires, for he has the right to assume that a driver will also exercise due care and approach the crossing with his vehicle under proper control." The recent case of *Deputy* v. *Kimmel*, 73 W. Va. 595 [Ann. Cas. 1916E, 656, 51 L. R. A. (N. S.) 989, 80 S. E. 919], and the note thereto appended contain also interesting and pertinent suggestions upon the subject. We may quote from the syllabus the following: "A person lawfully in a public highway may rely upon the exercise of reasonable care by drivers of vehicles to avoid injury. Failure to anticipate omission of

such care does not render him negligent. A pedestrian is not bound as a matter of law, to be continuously looking or listening to ascertain if automobiles or other vehicles are approaching under penalty that if he fails to do so and is injured, his own negligence will defeat recovery of damages sustained.''

We feel satisfied that under any just and reasonable rule or the sanction of any recognized authority it cannot be said that the verdict of the jury is unwarranted.

[6] When the case was called for trial plaintiff asked and was granted permission to amend her complaint so as to correct a typographical error. The mistake was in the statement that she was walking from the northeast corner of Eighth and K Streets to the ''southeast corner of '8th and K Streets,'' whereas, it should have been to the ''northwest corner of 8th and K Streets.''

Of course, appellant was not prejudiced by the action of the court. It would, indeed, have been strange if the trial judge had not permitted the amendment. If he had refused it, he would certainly be subject to censure. But he did what might be expected by those who understand the importance of the exercise of a wise discretion to see that causes are tried upon their merits.

[7] The other complaint of appellant is equally devoid of merit. It is disclosed by the following quotation from the record:

''Mr. Coughlin: 'Plaintiff rests.' Mr. Gilmore: 'I would like to submit a matter before the Court: if the Court sees fit, may we excuse the jury.' The Court: 'I don't believe it is necessary; just state your motion, I do not care to hear it argued.' ''

Thereupon counsel for appellant moved for a nonsuit, which was denied. We know nothing in the law requiring the court to hear argument upon a motion for nonsuit or to order the motion to be made in the absence or without the hearing of the jury. It is a matter committed to the sound discretion of the trial judge, and we perceive no reason for doubting the propriety of the course that was pursued. No doubt, the trial judge was satisfied that the case was one for the jury and that it would lead simply to a waste of time and effort to permit argument. We think that such conclusion was entirely justified. If it was thought by

appellant that the jurors might be inclined to consider the circumstance as an indication of the judge's opinion in favor of plaintiff and hence might be more readily induced to find a verdict for her, he should have requested an instruction to meet the situation.

After a consideration of the whole record we are confident that the verdict should not be disturbed and the judgment is affirmed.

Finch, P. J., and Hart, J., concurred.