[Civ. No. 7558. First Appellate District, Division One.—September 16, 1931.]

GEORGE GAJANICH, Respondent, v. JOHN R. GREGORY, Appellant.

Daniel W. Burbank, C. F. Laumeister, Robert E. Fitzgerald and Pembroke Gochnauer for Appellant.

Jesse H. Miller for Respondent.

THE COURT.—An appeal by defendant John R. Gregory from a judgment for plaintiff in an action for damages for personal injuries sustained by plaintiff when struck by defendant's automobile.

Defendant denied the alleged negligence, and as a separate defense averred that plaintiff prior to the filing of the action, for a valuable consideration, released and discharged defendant from all claims for damages or causes of action arising out of the accident described in the complaint.

The questions of negligence and of the validity of the alleged release were submitted to a jury, which returned a verdict in favor of plaintiff for $12,500. Following a motion for a new trial the plaintiff remitted the sum of $6,500 from the judgment, which was thereupon reduced to $6,000 with costs of suit.

Defendant concedes that the evidence on the question of negligence was conflicting and sufficient to sustain the verdict in that respect, but contends as grounds for his appeal that the release was binding and precluded a trial of the issues as to negligence, and that the court erroneously submitted the question of the validity of the release to the jury; further, that the court erred in certain of its instructions, and that plaintiff by signing the release was guilty of negligence and is estopped to question its effect.

The evidence shows the plaintiff to be a Slavonian who could neither read nor write the English language. He could, however, write his name. He was injured on March 8, 1929, at about 5 o'clock P. M. near the corner of Eighteenth and Third Streets in San Francisco after alighting from a street-car. Following the accident he was taken to the San Francisco Hospital, where he remained until April 18, 1929. On Saturday, March 9, 1929, the defendant reported the accident to his insurance carrier, namely, California Casualty Indemnity Exchange, a corporation, which maintained its office in San Francisco. On the afternoon of March 9th plaintiff was visited by H. L. Johnson, an employee of W. Daniel Hay, who testified

that he was engaged in the business of adjusting claims, and employed persons to solicit claims from injured persons. Hay further testified that he obtained the names of such persons from newspapers and hospital records. According to the plaintiff, Johnson represented himself to be an attorney, and stated in effect that he would act as such without cost and "collect insurance" for the plaintiff. Johnson appeared at the hospital again on Monday, March 11, 1929, when he represented to plaintiff a document for his signature. Plaintiff's testimony as to Johnson's statement regarding its character was as follows: "Mr. Johnson, he says he wants sign go show somebody he is my lawyer." He further testified that he could not read, nor was the document read to him; that nothing was said about settling his claim; that he did not know it to be a release, and that he signed believing it to be as represented by Johnson. He further claims that the only writing he signed is that relied upon by the defendant as a release. This document is in part a printed form, and reads as follows:

"Release of All Claims.

"Know all men by these presents that George Gianich in consideration of Five Hundred Dollars ($500.00), receipt of which is hereby acknowledged, I hereby release and discharge U. S. Steel Products Co. and/or any other person or persons, of and from all claims, damages, demands and/or causes of action which I may have or may ever have by reason of an accident sustained on or about the 8 day of March, 1929, substantially as follows: Injuries and damages sustained in accident occurring near intersection of 18th street and 3rd street, San Francisco, involving automobile driven by John R. Gregory.

"I agree that I have read or had read to me this entire document, and I rely wholly upon my own judgment without influence by anyone or their representatives in making this settlement, and fully understand and agree that it fully settles and discharges all claims and damages, and constitutes the entire agreement of the parties herein named without admission of any liability or any other promise or consideration than herein stated.

"X GEO GIANICH.

"Witnesses: W. DANIEL HAY.
"H. L. JOHNSON.

"State of California } ss.
 City and County of San Francisco }

"On this 11th day of March in the year one thousand nine hundred and twenty-nine before me, Mattie G. Stirling, a notary public in and for the City and County of San Francisco, State of California, residing therein, duly commissioned and sworn, personally appeared Geo. Gianich, known to me to be the same person whose name is subscribed to the within instrument, and he duly acknowledged to me that he executed the same.

"In witness whereof I have hereunto set my hand and affixed my official seal at my office in the City and County of San Francisco the day and year in this certificate first above written.

"(Seal) MATTIE G. STIRLING,
"Notary Public in and for the City and County of San Francisco, State of California."

It was further testified that a few minutes after the paper was signed Hay came to plaintiff's bedside and was introduced by Johnson as "superintendent for the insurance company". Hay then stated in substance that plaintiff was negligent at the time of the accident, and that he would pay him $250, which amount plaintiff declined to accept. Another patient at the hospital and his wife overheard a part of this conversation, and testified that Hay stated to plaintiff "You will get $250 and no more," and that the latter said in reply "I no take." Hay on the same day took the paper to a notary public, and by representing that he saw plaintiff sign the same induced the notary to attach thereto her certificate, shown above, that plaintiff personally appeared before her and acknowledged its execution. That this was untrue was admitted by the notary at the trial. The evidence also shows sufficiently that Johnson was not a licensed attorney.

Before Hay saw the plaintiff he met one Richard L. Oliver, a claim adjuster in the employ of the California Casualty Indemnity Exchange. At this time Hay showed Oliver what purported to be a power of attorney constituting Hay plaintiff's attorney-in-fact, with authority to adjust all claims arising out of the accident, and which provided that Hay should receive fifty per cent of all sums recovered.

This paper, which bore the date March 9, 1929, purported to have been executed by plaintiff by his mark and witnessed by H. L. Johnson. A settlement for $500 was then agreed upon by Hay and Oliver, and the latter filled out the release in question, which was a form used by the indemnity company. Oliver testified that at Hay's request he at the same time caused a check for $500 to be drawn by the company payable to plaintiff and Hay, and delivered the same to the latter. This, he explained, was to permit Hay to procure the release and plaintiff's indorsement of the check at the same time, and thus obviate the necessity for two trips to the hospital. The check was dated March 11, 1929, but the release bears no date. It was testified by both Oliver and Hay that the release was prepared on March 11, 1929, and by the latter that plaintiff executed it on that date. The release was received by the company through the mail on the following day. The check, which was paid March 13, 1929, was indorsed by Hay, and also bears an indorsement which defendant claimed was made by plaintiff. The latter testified, however, that the indorsement was not made by him and that the check was not presented to nor seen by him previous to the trial. It was also testified in effect by a handwriting expert that the indorsement was a forgery. According to Hay the release was signed and the check indorsed in his presence by plaintiff. At the same time he showed plaintiff the purported power of attorney, and the latter admitted its execution. Plaintiff denied that anything was signed while Hay was present, or that he admitted the execution of the power of attorney. He insists that the only paper signed by him was the one signed at Johnson's request before Hay appeared on the scene, and that he signed nothing by his mark. That he was physically able to sign his name on March 9, 1929, the date of the purported power of attorney to which it is claimed he affixed his mark, was shown by the fact that on that date he signed a request to be admitted to the hospital.

No part of the proceeds of the check was received or accepted by plaintiff, but on or about March 23, 1929, $250 of the amount was deposited to his credit in a San Francisco bank by Hay. It appears that the deposit book was brought to the hospital by Johnson and, without plaintiff's

consent, placed in an open drawer at his bedside. Later the book was returned to Hay.

Johnson, whose name was affixed to the purported power of attorney, was not called as a witness at the trial. It was stated by plaintiff's counsel in open court that Johnson had been sitting in the courtroom during the trial, whereupon defendant's counsel disclaimed any acquaintance with him. Other than this no explanation of the failure to call Johnson to the stand was offered.

In plaintiff's verified complaint as filed appeared a cause of action for rescission of the release, and it was there alleged that plaintiff, induced by the false representation that Johnson was an attorney at law and would act for him, executed a power of attorney on March 9, 1929. This cause of action was dismissed. The pleading was not admissible in evidence as evidence of the fact so stated (*Morris* v. *Lachman,* 68 Cal. 109 [8 Pac. 799]; *Stern* v. *Loewenthal,* 77 Cal. 340 [19 Pac. 579]; *Ralphs* v. *Hensler,* 114 Cal. 196 [45 Pac. 1062]; *Miles* v. *Woodward,* 115 Cal. 308 [46 Pac. 1076]; *Williams* v. *Seiglitz,* 186 Cal. 767 [200 Pac. 635]). It was, however, properly offered by defendant and properly admitted for the purpose of impeaching plaintiff's testimony that no power of attorney was executed (*Williams* v. *Seiglitz, supra; Estate of O'Connor,* 118 Cal. 69 [50 Pac. 4]; *Schuh* v. *Herron Co.,* 177 Cal. 13 [169 Pac. 682]; *Cornwell* v. *Mulcahey,* 62 Cal. App. 659 [217 Pac. 568]), and was competent only for that purpose (*Worley* v. *Spreckels Bros. etc. Co.,* 163 Cal. 60 [124 Pac. 697]; *Keyes* v. *Geary St. etc. R. R. Co.,* 152 Cal. 437 [93 Pac. 88]; *Albert* v. *McKay Co.,* 174 Cal. 451 [163 Pac. 666]; *Estate of Relph,* 192 Cal. 451 [221 Pac. 361]), the weight to be given it being a question for the jury (*Weissbaum* v. *Eibershutz,* 211 Cal. 170 [294 Pac. 396]).

It was further testified that an offer was made to repay the Indemnity Company the $500 upon the surrender of the so-called release, but its agent refused, stating that they had the release and "intended to keep it", and "stand upon it". The record discloses, however, no evidence of plaintiff's ability to pay the amount had the offer been accepted. In addition a notice was served on both the company and the defendant that plaintiff rescinded the release upon the grounds of fraud, mistake and want of consideration there-

for. ■ The defendant set forth the purported release in his answer. No affidavit of denial, as required by section 448 of the Code of Civil Procedure, was served or filed by plaintiff, and defendant at the opening of the trial moved for judgment on the pleadings, and objected to the admission of any evidence thereunder. The motion was denied and the objection overruled.

The above section provides that when the defense to an action is founded upon a written instrument, and a copy thereof is contained in· the answer, the genuineness and due execution of such instrument are deemed admitted unless the plaintiff file with the clerk within ten days after receiving a copy of the answer an affidavit denying the same, and serve a copy thereof on the defendant. It has been held that by the use of the term genuineness is meant that the document pleaded is the identical instrument which it purports to be, and that it appears in the exact form in which it passed between the parties; and that the admission of its due execution means only that it was regularly signed and delivered in the form in which it appears (*Moore* v. *Copp,* 119 Cal. 429 [51 Pac. 630] ; *McKenzie* v. *Los Angeles Life Ins. Co.,* 97 Cal. App. 659 [275 Pac. 1003] ). Nor do these admissions preclude a party from challenging the effect of the instrument on the grounds of fraud or mistake; and under section 462 of the Code of Civil Procedure such defenses need not be pleaded by way of replication (*McKenzie* v. *Los Angeles Life Ins. Co., supra; Moore* v. *Copp, supra; Sterling* v. *Smith,* 97 Cal. 343 [32 Pac. 320], *Baird* v. *Pacific Elec. Ry. Co.,* 39 Cal. App. 512 [179 Pac. 449] ; *Furlong* v. *White,* 57 Cal. App. 265 [196 Pac. 903] ).

■ Defendant further contends that these issues were equitable, and that consequently plaintiff had not right to have the same tried by a jury; also that a verdict being merely advisory in such cases, it was the duty of the court to make findings thereon. ·

It appears to be the rule, even in those jurisdictions where separate systems of law and equity prevail, that in cases where the execution of a release is obtained through fraud, or where through some trick or deception a person signs a paper other than that which he intended to sign, the avoidance of the release is within the jurisdiction of a court of law because the validity of the instrument is in question;

and it has been generally held in jurisdictions where legal and equitable rights are administered in a single court that a release set up as a bar may be attacked for fraud, whether in the execution, or consisting of misrepresentations which induced the giving of the release, and that no decree of rescission or cancellation is necessary (23 R. C. L., Releases, sec. 40, pp. 410, 411; *Girard* v. *St. Louis Car Wheel Co.*, 123 Mo. 358 [45 Am. St. Rep. 556, 25 L. R. A. 514, 27 S. W. 648]; *Dixon* v. *Brooklyn etc. Co.*, 100 N. Y. 170 [3 N. E. 65]; 20 L. R. A. (N. S.) 915, note; *Hartley* v. *Chicago etc. Ry.*, 214 Ill. 78 [73 N. E. 398]). That the same rule prevails in this jurisdiction is shown by numerous decisions, namely, *Smith* v. *Occidental S. S. Co.*, 99 Cal. 462 [34 Pac. 84]; *Meyer* v. *Haas*, 126 Cal. 560 [58 Pac. 1042]; *Mairo* v. *Yellow Cab Co.*, 208 Cal. 350 [281 Pac. 66]; *Edmunds* v. *Southern Pac. Co.*, 18 Cal. App. 532 [123 Pac. 811]; *Wilson* v. *San Francisco-Oakland Terminal Rys.*, 48 Cal. App. 343 [191 Pac. 975].)

It is further urged that the admission of evidence of fraud in obtaining the purported release, and in that connection of evidence that defendant was insured and that a settlement was attempted, prevented defendant from having a fair trial on the issues of negligence and damage.

That the evidence was competent on the issue of fraud cannot be disputed. As was said in *State* v. *Farmer*, 84 Me. 440 [24 Atl. 985]: "That evidence properly admissible for one purpose may be so perverted in its use as to effect a different and illegitimate purpose is not altogether preventable; but such evidence cannot on that account be wholly rejected. The correction of its abuse lies in such explanation as the presiding judge may feel required to give to the jury concerning it." As held in *Adkins* v. *Brett*, 184 Cal. 252 [193 Pac. 251], the defendant is entitled in such cases to an instruction that the jury shall consider the evidence only for the purpose for which it is received. But it was not the duty of the court to instruct the jury in the absence of a request from the defendant (*Liebrandt* v. *Sorg*, 133 Cal. 571 [65 Pac. 1098]; *Courboisier* v. *Burger*, 61 Cal. App. 470 [215 Pac. 93]), and, so far as shown, no request for such an instruction was made.

It is further claimed that the verdict was so excessive as to indicate that it was the result of passion or

prejudice. As stated, the trial court was of the opinion that the finding of the jury as to the extent of the damage, namely, $12,500, was not supported by the evidence, and directed that the verdict be set aside and a new trial granted on the ground that the same was excessive unless plaintiff remit the sum of $6,500. This having been done, the motion for a new trial was denied and a judgment entered for $6,000.

Plaintiff sustained a comminuted fracture of the right fibula, a similar injury to the left clavicle, many bruises and severe nervous shock. He was confined to the hospital for over a month, was on crutches for two months after leaving, and at the time of the trial seven months later was still under medical treatment. He was examined again by a physician on the day before the trial, at which time it was shown that he suffered from a twenty to twenty-five per cent limitation of motion of the knee joint. In using the leg in walking the entire lower limb became swollen, necessitating the use of a cane. It was also shown that he had a forty to fifty per cent permanent disability of the shoulder; and in the opinion of a physician it would be from six to nine months after the date of the trial before he would be able to work. He incurred a liability of $250 for physicians' services, and suffered a loss of wages to the date of the trial of $700.

The trial court has discretion to grant a new trial for excessive damages appearing to have been given under the influence of passion or prejudice; and it is his duty, if from the evidence he concludes that the verdict is too large, either to provide for its reduction or grant a new trial (*Morris* v. *Standard Oil Co.*, 188 Cal. 468 [205 Pac. 1073]). This course the court followed; and from all the evidence we are satisfied that the amount to which the judgment was reduced was fairly supported and that the motion for a new trial was thereupon properly denied.

Defendant contends that Hay and Johnson were plaintiff's agents and that the release was binding on him; further that he was negligent in signing the same, and that in any case his failure to make restitution precludes an avoidance of the release.

The alleged agency depended upon whether plaintiff executed a power of attorney to Hay, it not being claimed

that Johnson entered into the negotiations with the Insurance Company or that he had authority to settle the claim. The weight to be given the testimony of the witnesses and the inferences to be drawn from the circumstantial evidence were questions for the jury. We are satisfied that the evidence was amply sufficient to support findings that what were claimed to be plaintiff's signatures subscribed to the power of attorney and indorsed upon the check were forgeries. ▮

It is the general rule that a person who executes a contract is charged with knowledge of all its provisions where he had the means of such knowledge and of which he negligently deprived himself (*Kimmell* v. *Skelly*, 130 Cal. 555 [62 Pac. 1067]; *Burt* v. *Los Angeles Olive etc. Assn.*, 175 Cal. 668 [166 Pac. 993]; and it has been held that the fact that he is illiterate does not change the rule (*Hawkins* v. *Hawkins*, 50 Cal. 558). But where a fiduciary relation exists, and as a result a person is fraudulently induced to execute a contract in the reasonable belief that he is signing something else, a different rule applies, and the instrument is void *ab initio* (6 Cal. Jur., Contracts, sec. 50, p. 86). The latter rule has been applied in numerous instances where, due to illiteracy or a weak mental condition, persons who were unable to comprehend the effect of their acts were induced to execute releases and other contracts (*Smith* v. *Occidental S. S. Co., supra; Moore* v. *Copp, supra; Meyer* v. *Haas, supra; Calmon* v. *Sarraille,* 142 Cal. 638 [76 Pac. 486]). And it has been held that the doctrine of rescission and restoration has no application in such cases for the reason that the plaintiff "is not attempting to avoid a contract which he has made, but is showing that he did not make the contract which he apparently made" (*Meyer* v. *Haas, supra; Garcia* v. *California Truck Co.,* 183 Cal. 767, 770 [192 Pac. 708]). ▮ Where a rescission is necessary as a condition to recovery the plaintiff is only required to restore anything of value he has received (Civ. Code, sec. 1691); and in the present case the evidence sufficiently shows that Hay was not plaintiff's agent, and consequently payment to him was not payment to the plaintiff. Furthermore, the indorsement of plaintiff's name upon the check being a forgery, there was no acceptance of the check by him, and, according to the testimony, he refused at all times to receive any part of the amount paid to Hay.

Moreover, according to Oliver the check was not delivered to Hay in reliance upon the previous execution of a release by plaintiff or upon any such representation, but before any release was signed; and it is clear from the evidence that the company relied solely upon the forged power of attorney as evidence of Hay's authority to compromise the claim.

 It is an essential element of estoppel by conduct that the party asserting it should have relied upon the representations or admissions of the adverse party; and if he relies upon negligence as the basis of the estoppel he must show that such negligence was the proximate cause of the deceit (10 Cal. Jur., Estoppel, sec. 20, p. 636; *Mercantile Trust Co.* v. *Sunset etc. Co.*, 176 Cal. 461 [168 Pac. 1037]; *Barstow* v. *Savage Min. Co.*, 64 Cal. 388 [49 Am. Rep. 705, 1 Pac. 349]; *Stoner* v. *Security Trust Co.*, 47 Cal. App. 216 [190 Pac. 500]). If the power of attorney was forged it cannot be contended that plaintiff's negligence made the forgery possible; and if the check was delivered before the release was signed, or not in reliance upon any representation that the same had been signed, an essential element of the alleged estoppel is wanting. Nor does the evidence show that any act or omission by the plaintiff made it possible for Hay to procure the payment of the check.

 The court instructed as to the legal effect of the execution of a release by plaintiff in the belief that he was signing something different; also as to acts which would constitute forgery of the power of attorney and of the indorsement of a check, and the effect of forgery. Defendant makes numerous objections to their sufficiency, but we are satisfied that, taken with the other instructions, they fairly state the law and that no prejudicial error can be predicated thereon.

The evidence fairly supports the conclusions of the jury, and after an examination of the entire record we find no error which can reasonably be said to have resulted in a miscarriage of justice.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 16, 1931, and a

petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 12, 1931.