Filed 9/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BUTLER AMERICA, LLC,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>AVIATION ASSURANCE<br>COMPANY, LLC, et al.,<br><br>     Defendants and Appellants. | 2d Civ. No. B298696<br>(Super. Ct. No. 1440003)<br>(Santa Barbara County) |

Alter egos of a judgment debtor appeal an order amending the judgment to add them as judgment debtors. We affirm. A judgment debtor with an empty shell is easy to crack.

### FACTS

Craig Garrick controls and has an ownership interest in a number of entities involved in the aviation business. Among the entities are: Aviation Assurance Company, LLC (AAC); ComAv, LLC (ComAv); ComAv Asset Management, LLC, formerly known as Pacific Aviation Group, LLC (PAG); ComAv Technical Services, LLC, formerly known as Southern California Aviation, LLC (SCA); and Aviation Finance Services, LLC (AFS) (collectively "Garrick entities").

The trial court ordered that Garrick individually and the Garrick entities be added to a judgment Butler America, LLC (Butler) has against AFS.

*Butler v. AFS*

Butler and AFS signed a written contract in which Butler would provide staffing and payroll services to AFS. Butler paid AFS's staff and billed AFS for its services. AFS made partial payment on Butler's invoices, but ultimately defaulted on the agreement, leaving $896,578.40 owing to Butler.

Butler sued AFS to recover the balance owing. In June 2014, the parties entered into a settlement agreement. The parties contemplated that AFS would receive income by managing the leasing of jet engines owned by Scaled Composites, LLC (Scaled Composites contract). Under the terms of the settlement agreement, AFS would pay Butler the greater of $10,000 per month or 50 percent of the monthly revenue AFS received for its management responsibilities to Scaled Composites, LLC.

The settlement agreement provided that AFS would grant Butler "a security interest in AFS's entire revenue and income interest in the [Scaled Composites contract]." AFS executed a security agreement as part of the settlement. The security agreement refers to AFS's "revenue and income interest" in the Scaled Composites contract as security for AFS's performance of the settlement agreement. The Scaled Composites contract was attached as an exhibit to the security agreement. The Scaled Composites contract, however, was between Scaled Composites and PAG, not AFS.

Paragraph 3.1 of the settlement agreement provides for mutual releases as follows: "3.1 Subject to Section 3.2 below,

BUTLER and AFS hereby fully and forever release and discharge each other and their parents, subsidiaries and all their respective heirs, attorneys, agents, representatives, affiliates, predecessors, successors, directors, members, managers, officers, and/or employees from any and all claims, suits, causes of action, obligations, damages, liability, costs, fees and expenses, of whatever kind or nature, in law, equity or otherwise, known or unknown, contingent or non-contingent, which in any manner arise from, relate to, or could have been asserted in the Action, and any other claim that exists between BUTLER and AFS, whether related to the Action or completely unrelated to the Action."

Section 3.2 of the settlement agreement provides that the releases in section 3.1 shall not apply to "any claim, cause of action or liability arising from a Party's breach of this Agreement or the Security Agreement . . . ."

Finally, the settlement agreement provides for a stipulated judgment to be entered on breach of the agreement.

AFS made 10 minimum $10,000 monthly payments to Butler under the settlement agreement, then defaulted. The trial court entered the stipulated judgment against AFS. The judgment now totals $1.2 million. Butler has been unable to collect any of it.

*Motion to Add Alter Ego Defendants*

AFS was a shell entity. From 2012 it had no substantial assets and conducted no substantial business activities. From February 2012 to February 2014, AAC deposited money in AFS's bank account that AFS passed through to Butler as partial payment on Butler's invoices. AAC also deposited money that AFS passed through to its attorneys to defend AFS in the Butler

3

lawsuit and to pay Butler under the settlement. Garrick claimed the money AFS received from AAC was a loan. But Garrick admitted there are no loan documents and he could not identify the terms of the loan.

AFS did not have any employees who were not also employees of other Garrick entities. Thus, the money Butler was paying for AFS staffing was paying for the staffing of other Garrick entities. Garrick could not identify any transaction that a Butler-paid AFS employee performed for AFS.

All the Garrick entities had the same office in Victorville. When asked about communications between AAC and AFS, Garrick replied that it was silly to ask how he communicated with himself. Garrick acknowledged there was no written agreement between PAG and AFS as to what AFS's role would be in the Scaled Composite contract or what income AFS would receive from the contract.

In making the settlement agreement, AFS disclosed that it had no assets and provided documentation to support that disclosure. AFS, however, failed to disclose that it was not a party to the Scaled Composites contract; that there was no written agreement as to what income AFS would receive under the contract; and that from July 2013, when the Scaled Composites contract was made, through June 2014, when AFS induced Butler to enter into the settlement agreement, PAG had received no income from the contract. The trial court found that the security agreement was illusory.

DISCUSSION

I.

*Release Clause*

The release clause in the settlement agreement releases all subsidiaries, parents, and principals of AFS. Garrick contends he and the Garrick entities are protected by the settlement agreement's release clause. Garrick is wrong for a number of reasons, any one of which is fatal to his argument.

*(a)     Express Terms of the Release Clause*

The settlement agreement's release clause, section 3.1, begins, "Subject to Section 3.2 below . . . ." Section 3.2 provides in part, "The above releases in Section 3.1 shall not apply to . . . any claim, cause of action or liability arising from a Party's breach of this Agreement . . . ." The stipulated judgment arose directly from AFS's breach of the settlement agreement. By the terms of the settlement agreement, the releases do not apply.

Garrick relegates section 3.2 in his opening brief to a footnote. He does not cite the text of the section. Instead, he cryptically states that the exceptions set forth in section 3.2 concern the parties' obligations under the settlement agreement, and that only Butler and AFS are parties to the agreement. From this, he expects us to conclude that the exceptions stated in section 3.2 apply only to AFS and Butler. But that is not what section 3.2 says. It says, "The above releases in Section 3.1 shall not apply . . . ." Nothing in section 3.2 can reasonably be construed as limited to releases between Butler and AFS.

Garrick's reliance on *In re Mission Ins. Co.* (1995) 41 Cal.App.4th 828 is misplaced. There the court stated, "'Because appellants knew they had a claim . . . against respondents, they had a duty to specifically exclude that claim from the release

5

agreement.'" (*Id.* at p. 839, quoting *Edwards v. Comstock Ins. Co.* (1988) 205 Cal.App.3d 1164, 1169.) That is exactly what section 3.2 does. It excludes from the release any action to enforce the settlement agreement.

### (b)   Breach of Contract

It is undisputed that AFS breached the settlement agreement. It is a fundamental principle of contract law that a material breach by one party excuses performance by the non-breaching party. (Civ. Code, § 1439; *Walker v. Harbor Business Blocks Co.* (1919) 181 Cal. 773, 778 [promisor's failure to perform releases promisee from performance and justifies promisee in abandoning the contract].) Here, AFS's breach of the settlement agreement terminated the agreement, including the releases. AFS cannot breach the settlement agreement and also demand its benefits.

Garrick argues that he and the Garrick entities are not parties to the settlement agreement. But if Garrick and the Garrick entities have any standing under the agreement, they are third party beneficiaries. A third party beneficiary's rights are no greater than those of the promisee. (*Gietzen v. Covenant RE Management, Inc.* (2019) 40 Cal.App.5th 331, 339-340 (*Gietzen*).) When AFS's breach terminated its rights in the settlement agreement, Garrick and the Garrick entities' rights were also terminated.

### (c)   Merger in the Judgment

When a final judgment is entered, all causes of action arising from the same obligation are merged into the judgment. (*Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 301.) The judgment

6

extinguishes the contractual rights of the parties and substitutes only such rights as attach to the judgment. (*Id*. at pp. 301-302.)

Here when the stipulated judgment was entered on the settlement agreement, it terminated all of AFS's and its third party beneficiaries' rights in the agreement, including the releases.

Garrick cites *Gietzen*, *supra*, 40 Cal.App.5th 331, for the proposition that the entire contract is not merged into the judgment. He concludes that under *Gietzen* only AFS's rights are merged into the judgment because the question of additional debtors was not before the court when the judgment was entered. Garrick's reliance on *Gietzen* is misplaced.

In *Gietzen*, a shopping center tenant sued its landlord for breach of a lease covenant to provide adequate parking. The tenant recovered a money judgment on that cause of action. But the judgment did not terminate the lease, and the tenant remained in possession. In attempting to collect on its money judgment, the tenant was hampered by a lease provision limiting the landlord's liability to its interest in the shopping center. The tenant argued that the provision was not enforceable because the lease had been terminated by merger in the judgment. That was not true. The tenant was still in possession, and the parties had continuing obligations to each other under the lease. We held only the cause of action that resulted in the judgment was merged into the judgment. (*Gietzen*, *supra*, 40 Cal.App.5th at p. 337.)

Here, in contrast to *Gietzen*, when AFS breached the settlement agreement, Butler had no further obligation to AFS. The settlement agreement was terminated and merged into the judgment. *Gietzen* does not stand for the proposition that third

7

party beneficiaries are not merged in a judgment against the promisee. In fact, *Gietzen* makes it clear that the rights of third party beneficiaries cannot be greater than those of the promisee. (*Gietzen*, *supra*, 40 Cal.App.5th at pp. 339-340.)

(d) *Fraud*

The trial court found that in entering into the settlement agreement, AFS failed to disclose that AFS was not a party to the Scaled Composites contract; that AFS had no written agreement with PAG as to what role AFS would have in the contract or what income AFS would receive under the contract; and that from the time PAG executed the contract in July 2013 through June 2014 when AFS induced Butler to enter into the settlement agreement, PAG had received no income from the contract. The court concluded that "AFS's pledge of the Scaled Composites monies was essentially illusory."

Garrick argues the trial court's findings are not supported by substantial evidence. His argument is based on a view of the evidence most favorable to himself. But that is not how we view the evidence. On appeal, all conflicts in the evidence are resolved in favor of the respondent and all reasonable inferences are indulged in to uphold the findings of the trial court. (*Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 835.)

The elements of a cause of action for fraudulent concealment are: (1) concealment of a material fact; (2) by a defendant with a duty to disclose; (3) the defendant intended to defraud by failing to disclose; (4) plaintiff was unaware of the fact and would not have acted as it did had it known the fact; and (5) damages. (*Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 162.) A release obtained through

8

fraud is invalid. (*M.G. Chamberlain & Co. v. Simpson* (1959) 173 Cal.App.2d 263, 276.)

Garrick argues that Butler knew AFS was not a party to the Scaled Composites contract. He points out that the contract was attached as an exhibit to the security agreement. But one need not be a direct party to a contract to have an interest in it. Both the settlement agreement and the security agreement represented that AFS had a "revenue and income interest" in the contract, and that AFS would pay Butler from its "management responsibilities" under the contract. But the facts were that AFS had no income interest in the contract, or for that matter, no interest of any kind, and AFS had no management responsibilities in the contract from which to derive income. In addition, at the time the settlement agreement was signed, the Scaled Composites contract was moribund if not dead. There was no chance AFS would ever receive income from the Scaled Composites contract. AFS knew the facts, but failed to disclose them. The entire transaction reeks of fraud on AFS's part.

AFS argues the trial court abused its discretion in considering Butler's fraud allegation because Butler raised the matter for the first time in its reply papers. But the record shows that Butler raised the matter in its initial moving papers. Moreover, Garrick's counsel commented on Butler's claim of fraud at the hearing on the motion, but raised no objection or requested the opportunity to respond. Garrick has forfeited the issue on appeal. (See *Wiley v. Southern Pacific Transportation Co.* (1990) 220 Cal.App.3d 177, 188 [failure to object to a procedural defect forfeited defect on appeal].)

Garrick claims that Butler cannot rescind the agreement for fraud and retain the $100,000 paid to it by AFS. But Butler is

9

not rescinding the settlement agreement; it is enforcing it. Butler can avoid a release induced by fraud without rescinding the agreement. (*Gajanich v. Gregory* (1931) 116 Cal.App. 622, 631 [a release may be attacked for fraud that induced the release and no decree of rescission is necessary].)

Garrick's reliance on *Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.* (2010) 50 Cal.4th 913, is misplaced. There the court concluded that "a release of a disputed claim . . . does not permit a party to elect the remedy of a suit for damages [for fraud] when the release itself bars that option." (*Id*. at pp. 917-918.) But here the release does not bar that option. Section 3.2 expressly provides that the release does not cover actions to enforce the settlement agreement.

## II.

### *Evidence of Alter Egos*

Garrick contends the trial court erred in finding that Garrick and the Garrick entities are the alter egos of AFS.

Code of Civil Procedure section 187 (section 187) provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

The authority provided to courts by section 187 includes the power to add a judgment debtor where a person or entity is an alter ego of the original judgment debtor. (*Dow Jones Co. v. Avenel* (1984) 151 Cal.App.3d 144, 148.) In doing so, the court is amending the judgment to add the real judgment debtor. (*Id*. at

10

p. 149.) Ordinarily a corporation, or in this case a limited liability entity, is regarded as a separate legal entity. (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1106.) But where such an entity is used to perpetrate fraud or to accomplish some other wrongful or inequitable purpose, a court may disregard the entity and treat its acts as if done by the persons actually controlling it. (*Ibid*.) In applying the alter ego doctrine, no particular findings are necessary, but the conditions under which a corporate entity should be ignored vary according to the circumstances of each case. (*Id*. at p. 1108.)

Factors for the court to consider include identical equitable ownership, comingling of funds, use of the same offices, disregard of formalities, and use of one entity as a mere shell for the affairs of another. (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*, *supra*, 217 Cal.App.4th at pp. 1108-1109.) An important factor in determining alter ego liability is that a corporate entity is so undercapitalized that it is likely to have no sufficient assets to meet its debts. (*Automotriz del Golfo de California S. A. de C. V. v. Resnick* (1957) 47 Cal.2d 792, 796-797.)

In addition to showing a unity of ownership, the moving party must show an inequitable result will follow if the acts are treated as those of the entity alone. (*Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership* (2013) 222 Cal.App.4th 811, 815.) The decision to grant an amendment to add additional judgment debtors is reviewed for an abuse of discretion. (*Ibid*.)

In arguing that the trial court's findings are not supported by substantial evidence, Garrick again presents a view of the evidence most favorable to himself. But we view the evidence in a light most favorable to the judgment or order. (*Associated*

11

*Vendors, Inc. v. Oakland Meat Co.*, *supra*, 210 Cal.App.2d at p. 835.)

Here, Garrick owned and controlled all the Garrick entities. They had the same office and shared employees. Garrick used the money Butler paid to staff AFS to pay the employees of the other Garrick entities. The money AFS paid to Butler, as well as the money AFS paid for its defense of Butler's lawsuit, came from another Garrick entity. Garrick characterized the payments as loans, but the trial court did not find his testimony credible. He could not produce loan documents. Garrick did not observe the formalities required for keeping the entities separate. He dismissed the need for formal notice of a transaction between entities as giving notice to himself.

Most importantly, AFS was nothing but a shell. It had no substantial business activity and no income with which to pay its debts. The trial court could reasonably conclude its only function was to act as a screen for Garrick and the Garrick entities to hide behind to avoid paying Butler. The court's decision to amend the judgment is supported by overwhelming evidence.

Garrick argues the trial court improperly considered pre-release conduct. He relies on the authority that the release bars claims based on events occurring prior to the date of the release. (Citing *Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 589.) But Garrick's authority concerns claims that give rise to a cause of action. Amending the judgment is not a cause of action. It simply adds the true judgment debtors. In any event, pursuant to section 3.2 of the settlement agreement, the release does not apply. In addition, the release was procured by fraud.

Garrick argues there is no evidence that an equitable result will follow if the acts of AFS are treated as those of AFS alone. But it would be an inequitable result to preclude Butler from collecting its judgment by treating AFS as a separate entity. (*Relentless Air Racing, LLC v. Airborne Turbine Ltd. Partnership*, *supra*, 222 Cal.App.4th at p. 816.)

### III.

### *Estoppel*

Garrick contends Butler is equitably estopped from denying the separate existence of AFS and the Garrick entities.

The elements of equitable estoppel are: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely on the conduct to his prejudice. (*Hopkins v. Kedzierski* (2014) 225 Cal.App.4th 736, 756.)

Garrick does not rely on the traditional elements of estoppel in his opening brief. Instead he cites *Communist Party v. 522 Valencia, Inc.* (1995) 35 Cal.App.4th 980 (*Communist Party)*. In that case, the Communist Party claimed it is the alter ego of two corporations and requested the trial court to impose a constructive trust in the Communist Party's favor on the corporations' assets. In reversing the trial court's order imposing a constructive trust, the Court of Appeal said, "[A]lter ego is used to prevent a corporation from using its statutory separate corporate form as a shield from liability only where to recognize its corporate status would defeat the rights and equities of third parties; it is not a doctrine that allows the persons who actually

13

control the corporation to disregard the corporate form." (*Id*. at. p. 994.)

Far from assisting Garrick, *Communist Party* affirms that third parties such as Butler are not estopped from attacking the corporate status to prevent the defeat of their rights and equities. It is the persons who control the corporation who are estopped to deny the corporate status.

Garrick's reluctance to rely on the elements of estoppel is understandable in light of his inability to qualify under those elements. Garrick argues, contrary to the trial court's findings, that Butler was aware of all the pertinent facts prior to entering into the settlement agreement. Assuming for the sake of argument that is so, Garrick cannot satisfy two other elements.

The party asserting estoppel must be ignorant of the true state of facts and must show prejudice. Garrick was not ignorant of the true state of facts. He was well aware of all the facts. Nor can he show prejudice from Butler's reliance on the corporate form. To the contrary, Garrick used the corporate form to his advantage and to the prejudice of Butler.

Garrick cites *Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 285, for the proposition that prejudice is not required where the plaintiff acquiesced in the actions complained of. He claims Butler acquiesced in treating AFS as a separate entity when it elected to limit its security agreement to AFS's interest in the Scaled Composites contract. But nowhere in the settlement agreement, the security agreement, or stipulated judgment does it state that Butler's remedies are limited to AFS's interest in the Scaled Composites contract. In fact, AFS had no interest in the Scaled

14

Composites contract. The security interest was illusory and a vehicle Garrick used to perpetrate a fraud on Butler.

Equitable estoppel is a creature of equity. The foundation of equity is good conscience. (*DeGarmo v. Goldman* (1942) 19 Cal.2d 755, 764.) Equity will not aid one who acts unconscionably. (*Ibid.*)

Here Garrick breached the agreement to pay Butler; fraudulently induced Butler into entering into a settlement agreement; breached the settlement agreement; and is hiding behind a shell entity to avoid a lawful debt. Garrick now seeks the aid of equity to prevent Butler from collecting on its judgment. Garrick's conduct is unconscionable. Equity will not aid him.

IV.

*Precedent*

Garrick contends affirmance of the trial court's ruling would set a dangerous precedent.

Garrick argues that other investors and creditors of the Garrick entities have relied on the separate existence of those entities. He also claims the creditors relied on the settlement agreement and release in making business decisions. The creditors have had no opportunity to be heard.

But the same can be said anytime alter ego liability is imposed. Liability that might appear to be confined to one entity is imposed on other persons or entities. It is a risk unsecured creditors take. The existence of the settlement agreement and release changes nothing. Creditors know or should know that the settlement agreement, like any other contract, can be breached, possibly resulting in alter ego liability.

To accept Garrick's argument would result in the end of alter ego liability. That would harm creditors even more than its imposition. It would further encourage dishonest business owners to establish shell entities to avoid liability for lawful debt.

The cases on which Garrick relies involve the treatment of creditors in bankruptcy. (*Chemical Bank New York Trust Co. v. Kheel* (2d Cir. 1966) 369 F.2d 845, 848; *Leslie v. Mihranian* (*In re Mihranian*) (9th Cir. 2019) 937 F.3d 1214, 1215-1218.) Garrick is not in bankruptcy. The cases are not relevant here.

Garrick's expression of concern for his creditors is belied in light of his conduct toward Butler. The authority of the trial court to add alter egos as judgment debtors has long been recognized. (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*, *supra*, 217 Cal.App.4th at p. 1106.) Not affirming it here would set a dangerous precedent.

DISPOSITION

The judgment (order) is affirmed. Costs on appeal are awarded to respondent.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

16

Donna D. Geck, Judge

Superior Court County of Santa Barbara

_____

Buchalter, Robert M. Dato and Joseph M. Welch for Defendants and Appellants.

Chora Young, Paul P. Young, Joseph Chora and Armen Manasserian for Plaintiff and Respondent.