[Civ. No. 5992.   Third Appellate District.—April 13, 1938.]

JOHN A. LOGAN, Respondent, v. MILES ANDREWS et al., Defendants; B. I. MALOUF, Appellant.

Charles L. Nichols, Schell & Delamer for Appellant.

C. Arden Gingery and Dwight W. Stephenson for Respondent.

PULLEN, P. J.—This is an appeal by defendant Malouf from a judgment rescinding a written contract and directing appellant, among other defendants, to redeliver to plaintiff certain shares of stock of the First Bond & Mortgage Company of Glendale, or in lieu thereof, for judgment in the sum of $10,000.

The statement of facts as set forth in the briefs are quite involved, but it appears that in August, 1933, plaintiff was the owner of certain shares of stock of the mortgage company, and was also indebted to it in the sum of $11,500 secured by a deed of trust on certain real property. About that time, as alleged in the complaint, Miles Andrews, acting for himself and as agent for the defendants above named, including Malouf, appellant herein, entered into an agreement with plaintiff whereby plaintiff agreed to transfer to Andrews and one Styskal all of plaintiff's interest in the company, in consideration of the cancellation of the $11,500 obligation and the reconveyance to plaintiff of certain of the land held as security. This was agreeable to the parties concerned and the stock was transferred to Andrews and Styskal. Subsequently these two assigned all of their interest in the stock to appellant Malouf as owner. Thereafter respondent demanded of Malouf and the other defendants above named that the agreement be carried out and the note cancelled, and the property reconveyed. Upon refusal, this action was commenced praying that defendants be required to deliver to plaintiff the stock in question or in default thereof, for judgment in the sum of $10,000.

The answer of defendant and appellant Malouf admitted the purchase of the stock from his codefendants but denied the remaining allegations of the complaint. As a separate defense it was alleged that plaintiff was an officer of the corporation and the contract was an attempt on his part to gain for himself a valuable asset of the corporation, which was *contra bonos moros,* and plaintiff was thereby estopped from maintaining the action.

A further defense was that appellant was not bound by the contract, and that Malouf purchased the stock for a valuable consideration without notice of any contract between plaintiff and Andrews and Styskal.

As grounds of appeal it is urged the evidence was insufficient to support the judgment in many specified particulars, and especially challenged the finding that Andrews acted as agent for appellant Malouf. A determination of that particular issue will go far to solve the many problems here presented, and we will direct our attention particularly to that phase of the appeal. To do that, a review of all the evidence which, if given credence by the trial court, would logically lead to the conclusions of the court is necessary. We need not consider evidence contradictory thereto, however abundant, as it is only necessary here to determine whether or not the evidence, if believed by the court, was sufficient to justify the findings and judgment.

The mortgage company was a corporation having both preferred and common stock, and the contract thereof, as far as this case is concerned, was held by plaintiff. In addition to being an organizer plaintiff was also a director of the corporation and its president, and as before set forth, was also indebted to the corporation in the sum of $11,500, which indebtedness was evidenced by a promissory note and secured by a deed of trust on some 56 acres of land.

In June, 1933, the holders of the corporate stock, including plaintiff, entered into a written agreement with Fontaine and Halloran whereby these two agreed to purchase the stock of plaintiff and certain others.

This deal was not consummated, and some time in August of the same year Halloran introduced defendant Miles Andrews to plaintiff stating that he, Halloran, and his associates were unable to go on with the option to purchase and that Andrews was interested in making the deal. Some preliminary discussion was had between Andrews and plaintiff wherein plaintiff inquired of Andrews as to his financial ability to undertake the transaction, and also told Andrews that if he bought the stock that he, the plaintiff, would expect Andrews to take care of plaintiff's obligation to the corporation. This was agreeable to Andrews, and a meeting with the other proposed sellers and Andrews was arranged for a later date. Subsequently, Andrews deposited $10,000 in escrow, and Andrews was elected a director and president of the corporation. This escrow was opened in the name of Andrews and L. J. Styskal, an attorney. Andrews then entered into a contract with respondent under date of August

30, 1933, in which it was provided that if, as, and when the said escrow was closed and completed Andrews would procure the cancellation of respondent's obligation to the corporation if the respondent would convey to the corporation a designated parcel of the real property secured by the deed of trust. Upon the signing of this contract respondent transferred his stock into the escrow and thereafter the escrow was closed and the purchase of the stock completed.

It now becomes necessary to consider the evidence in the record tending to establish Andrews as the agent for appellant Malouf.

The block of stock held by respondent Logan was sufficient to control the corporation. This fact of course was known to Andrews, Styskal and Malouf. During early negotiations respondent had stated that he was not interested in selling his stock if the corporation was to be liquidated. One of the reasons perhaps, in impelling Malouf to conceal his interest in the deal, was the fact that he owned and operated a large competing business, The Standard Discount Corporation, and it might occur to respondent that Malouf's object in acquiring the Bond & Mortgage Company was to absorb or merge that company with his already established concern.

The interest of Malouf also appears early in the transaction, for it was upon his suggestion that Styskal, who had been his attorney for some years prior thereto, became interested in the purchase with Andrews, in order that he, Styskal, could advise Andrews and Malouf. Styskal could also see that the plan of Malouf was carried out in the arrangement of the escrow, and in also advising Andrews in obtaining the stock. The fact that Andrews, and Styskal, the personal attorney of Malouf, were authorized to act jointly also indicates that Andrews was acting for Malouf, for in that way Malouf had a further check on the plans of Andrews. The testimony of Styskal indicated also that he was acting under direct orders from Malouf and that it was to Malouf that he was reporting as to the progress of the negotiations and the contents of the escrow agreement.

Some question arose as to the authority of certain persons to transfer the stock held by the Campbell estate, the objection thereto being raised by Styskal, the attorney, although the stock was being purchased in the name of Andrews, but as subsequently appears the Campbell stock was transferred

through the escrow, not to Andrews, but to appellant herein. Also it will be noted that during these negotiations both Andrews and Styskal used appellant's automobile—further evidence of the interest of Malouf. So too, after the escrow was completed and it became time to designate the successors of some of the original directors of the company, the designation of these directors was not the work of Andrews but were the nominees of Styskal and appellant. Also, in spite of the fact that the escrow was in the name of Andrews, the escrow provided that the nomination of these new directors was to be by Andrews and Styskal.

On the day the escrow was closed a stockholders' meeting was held at which it was apparent that there was a vacancy in the fifth directorate. Upon the following day, so the minutes recite, director Styskal suggested that Mr. Malouf was one of the stockholders of the corporation, and that he was competent to be on the board and would make a desirable director, and he was thereupon duly elected. If it had not been the studied plan to place Malouf on the board, the fifth director could have been elected at the meeting of September 11th, just the day prior to the closing of the escrow, when the other four positions were filled on the board, except for the fact that on that day the stock had not then been endorsed to Malouf.

It is also apparent that the money that went into the escrow to pay for the stock was furnished by appellant. Checks were drawn on his account and were endorsed by Andrews and Styskal, and Styskal, being admittedly appellant's agent, made that act that of the principal himself. Furthermore these checks were never in the possession of Andrews but remained in the custody of Styskal and were always subject to appellant's control.

Examination of the endorsements on the stock certificates also reveals as to the preferred stock as well as some of the common stock that such stock was purchased directly from the owners and transferred to appellant. None of the certificates went to Andrews. As far as the corporate records were concerned Andrews never became the owner of these shares, which is also some evidence that Andrews was acting for appellant in acquiring the stock for him as his agent.

At the first director's meeting after the escrow was closed, the corporation was dominated by Malouf, Styskal and his

two aides, Thompson and Webb, defendant Andrews taking no part in the proceedings. The subsequent acts of directors in electing appellant president and making him general manager at the salary of $500 per month with authority to manage all of the business of the corporation indicated that the directors were apparently acting for appellant and not for defendant Andrews, although they had been elected directors prior to the closing of the escrow, and before Malouf was known in the transaction. It is apparent they were elected not for the benefit of Andrews but for the benefit of appellant.

The day following the closing of the escrow respondent saw appellant at the corporation's office and told him that he understood that he, the appellant, was in charge of the company and told him of his agreement with Andrews in regard to the cancellation of his promissory note and demanded performance thereof. Appellant did not at that time deny the agreement nor knowledge thereof nor of Andrews' authority to make the same, but replied that if the agreement was legal it would be carried out. A few days later respondent again asked appellant in regard to the performance of the agreement, and again appellant did not deny his liability but merely stated that he "wanted further time". On a third occasion, perhaps two weeks after the closing of the escrow, respondent again demanded performance on the part of appellant, and again appellant did not deny that he was liable on the agreement or that Andrews was not his agent in making the same, but told respondent that unless he would release him from the agreement he would expose respondent to the stockholders. Again some time later when respondent, Andrews and appellant were together, appellant asked respondent if he would cooperate with him and introduce him to the stockholders as a man of experience and ability, and if he would do that, he, Malouf, would perform the contract.

In November, 1933, at a stockholder's meeting respondent again demanded of appellant performance of his agreement. At that time appellant threatened to bring suit against the holders of the stock unless respondent would write a letter to him, appellant, relieving him of responsibility under the agreement. At the same time appellant told respondent that he, appellant, had drawn the escrow instructions and that respondent could be held on said contract. All of these

remarks and the attitude of appellant is indicative of the fact that appellant recognized his responsibility or at least recognized the fact that Andrews in signing the agreement with respondent was acting as his agent.

A somewhat similar agreement to that with respondent had been entered into at the time of the negotiation for the purchase of stock between defendant Andrews and one W. H. Andrews. After the termination of the escrow, W. H. Andrews demanded performance by appellant. After some delay this contract was recognized and paid. Appellant claimed that the settlement with W. H. Andrews was under a different contract or agreement, but W. H. Andrews testified that he never had any other but the one agreement with appellant. This circumstance is of some interest inasmuch as evidence of agency may be found in the fact that the alleged principal acquiesced in recognizing or acknowledging similar acts done on other occasions by the assumed agent.

The admission of appellant to the stockholders at their meeting in November, 1933, indicated that he was the undisclosed principal and that Andrews was his agent. He at that time told the stockholders that he had his attorney prepare the escrow and that there were two or three matters that were put in there, of which he did not understand the details, and asked the stockholders of record and Mr. Logan that he surrender the contract he had with Andrews. This statement is an implied admission that he understood in part although perhaps not completely, the terms of the escrow, and furthermore that he wanted a cancellation of the contract which also carried with it some admission of liability.

While it is true that the declarations of a person that he is the agent of another is not usually competent evidence of the agency, unless made in the presence of or communicated to, and acquiesced in by the principal, nevertheless, where *prima facie* evidence of such agency has been first shown such declarations are admissible. (*Dooley* v. *West American Com. Ins. Co.*, 133 Cal. App. 58 [23 Pac. (2d) 766].)

When, therefore, we examine the statements made by Andrews, we find in one of the early interviews between Andrews and the respondent, Andrews said he wanted to look over the audit and would let him know at an early date whether he and his associates would purchase the stock.

After some negotiations respondent stated to Andrews that he would take ninety-five cents on the dollar, to which Andrews replied that he would let him know in a few hours whether or not that offer was acceptable, indicating that he had not the power within himself to accept or reject the counter offer. Later, when respondent demanded of Andrews that he perform the agreement to take up the note he stated ''Malouf was the boss''. In the same conversation Andrews made some reference to the fact that appellant had not yet paid him all of his commission, which also is some evidence of agency. In a conversation had between appellant and certain of the stockholders he stated that he had paid $57,000 for the control of the corporation, and had paid defendant Andrews off, which is confirmation of the statement by Andrews that he was to receive a commission from appellant. About the time the escrow was opened Andrews stated at that time that ''he and his associates were buying the control of the . . . corporation''.

It is to be remembered also that appellant admitted that he was represented by defendant Styskal as his attorney. If Andrews and appellant were not acting jointly, it hardly seems probable that Andrews would have employed the same attorney as Malouf, from the fact that Styskal could not, in good faith, have represented both parties at the same time, as their interests were antagonistic.

It is to be noted too, that in this matter before the trial court Styskal acted as attorney for appellant, himself and Andrews, although Styskal stated that Andrews had taken no interest in the litigation.

Unless there was unity in purpose between these various defendants, it seems reasonable to assume that Styskal would have taken steps to relieve himself as attorney of record for an indifferent client unless he was acting for the three jointly and not any one in particular. It is also of interest to know that Andrews was not called as a witness to disprove the facts of asserted agency, the only witness perhaps who could testify directly as to that matter. This, in accordance with section 1963 of the Code of Civil Procedure, raised the inference that Andrews' testimony, if given, would have been adverse to appellant. In fact an examination of the entire record fails to reveal any testimony on the part of the

appellant denying the evidence of respondent as to the statements and admissions of appellant Styskal or Andrews.

It is urged by respondent that if an agency is not established in the first instance the facts in evidence do indicate a ratification by appellant. We feel that we need not discuss that phase of the case, as in our opinion the acts sufficiently establish the relationship of principal and agent.

Many other points are raised by appellant in his opening brief of some 100 pages, which are discussed in the brief of respondent of something over 500 pages, but we believe what we have said is sufficient to justify the finding of the court that Malouf, appellant herein, was the undisclosed principal, and that the judgment of the trial court in so finding was correct.

The judgment should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 2, 1938.