**STATE FARM MUT. AUTO. INS. CO.**
**v. PORTER.**
No. 12,531.

United States Court of Appeals
Ninth Circuit.

Dec. 21, 1950.

Rehearing Denied Feb. 1, 1951.

Leighton M. Bledsoe, Dana Bledsoe & Smith, all of San Francisco, Cal., for appellant.

Augustus Castro and Cooley, Crowley & Gaither, all of San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge and HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

On October 31, 1947 Charles E. Porter a pedestrian, was struck by an automobile then being driven by one Claggett at Richmond, California. Porter died the next day from the injuries. Thereafter Mrs. Porter, as Administratrix, appellee here, recovered a judgment against Claggett in the Superior Court of Contra Costa County, California, on account of such injuries and death. The automobile which Claggett was driving was described in a liability policy which the appellant, State Farm Mutual Automobile Insurance Company, had issued to one Wilbur Mehlin. Claiming that such Insurance Company was obligated, within its policy limits, to pay her judgment against Claggett, the appellee sued the appellant company, and recovered a judgment from which this appeal was taken. Jurisdiction in the court below was by reason of diversity of citizenship between appellee, a citizen of California, and appellant, an Illinois corporation.

By what it called "Coverage A" in its policy, the Insurance Company agreed "to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, because of bodily injuries * * * and death at any time resulting therefrom, sustained by any person * * * caused by accident and arising out of the ownership, operation, maintenance or use of * * * such automobile."

The term "Insured" was defined as follows: "The unqualified word 'insured' wherever used in Coverage A and in other parts of this policy when applicable to Coverage A includes the named insured and, except where specifically stated to the contrary, also includes (a) the spouse of the named insured residing in the same household as the named insured, (b) any other person but only while using the described automobile and any person or organization legally responsible for the use thereof provided the actual use of the described automobile is with the permission of the named insured."

Mehlin, the named insured, resided at Lincoln, Nebraska, where he was when the accident occurred. Claggett had been given permission to use the car by Mrs. Mehlin, who had driven it from Lincoln, Nebraska, to California. In proceeding against the Insurance Company, the appellee, plaintiff below, asserted (1) that Claggett was driving with the permission of the named insured, and (2) that after notification of the accident the Insurance Company did certain things, hereafter described, in the way of undertaking to adjust the plaintiff's claim, negotiate a settlement and in assuming defense of the action against Claggett, in consequence of which the Insurance Company waived the right to rely upon the condition of the policy requiring use of the automobile to be with Mehlin's consent, and is now estopped to deny that such consent was given.

Verdict was returned against the Insurance Company, and after judgment thereon, its motion for judgment notwithstanding the verdict was denied. The only question for us is whether the evidence is sufficient, as a matter of law, to sustain the verdict.

The evidence showed that a few days after the accident Mrs. Mehlin, in California, reported it to the Insurance Company. Attorneys for appellee also wrote the Company offering to discuss settlement without suit. A representative of the Company first replied that they could find no record of a policy, but two weeks later appellee's attorneys were advised by a telephone call from one of the Company's adjusters that there was insurance on the automobile, and their previous report was in error.

As soon as she thus learned of the insurance coverage appellee commenced the action against Claggett mentioned above, in the Superior Court of Contra Costa County. Mr. and Mrs. Mehlin were also joined as defendants because of the allegation that Claggett was driving with their

permission.[1] Summons was served upon Claggett who delivered the copy of the summons and complaint to the Insurance Company. It was testified that on December 31, 1947, one Gripenstraw, a claims adjuster for the Insurance Company, called on one of appellee's attorneys, discussed the claim, and offered $7500 in settlement. (The policy limits were $10,000.) The attorney testified that on that occasion the following conversation occurred: "So then I said it looks to me like a case where you should pay the policy limits. As far as I can see there is no question but what the man was liable for striking Mr. Porter and we would like to see you pay the policy limits here and if you save anything on the policy limits you will be doing well. He says, 'Well, the company won't do that.' I said, 'Why not?' He said, 'We may have a defense to the case.' 'Well, what is the defense? The only issues that are involved in the case are negligence and permission to use the automobile.' I said, 'We know the negligence is clear; any question about the permission?' He said, 'No, there isn't.' He says, 'We are satisfied that Mrs. Mehlin had the permission to bring the automobile out here and that Mr. Claggett had her permission to use it.'"

A month later, an Assistant Claims Superintendent of the Insurance Company again interviewed the same attorney for appellee, where the same offer of settlement was renewed but was rejected on behalf of appellee. At that time the Company representative indicated that it might pay as much as $8500 to settle. Since offers to arrange a settlement had thus failed, the Insurance Company thereupon turned the matter over to its San Francisco attorneys for defense of the action, and obtained from the appellee an extension of time within which to plead.

An answer on behalf of Claggett was filed by the attorneys on February 17, 1948,[2] verified by one of the attorneys. The complaint alleged that Claggett was driving the automobile with the consent and permission of Wilbur Mehlin. The answer thus verified and filed recited: "Answering the allegations of paragraph 3 defendant admits * * * that the defendant, Wilbur M. Mehlin, was the owner of the therein described Ford automobile and that this answering defendant was driving said automobile with his consent and permission * * *."

On March 12, 1948, the action was by agreement of the parties set for trial on July 7, 1948. Claggett was kept informed of the date of trial. A few days before that date arrived the Insurance Company's attorneys requested opposing counsel to consent to a continuance, stating that they had been unable to locate Claggett in California, that he was in Minnesota, and that they could not produce him in time. The requested stipulation was refused, and so the defending attorneys moved for a continuance, which was granted to July 14, 1948. At the time the continuance was obtained, appellee's attorneys were informed that no reservation of rights agreement had been secured from Claggett, although one would be obtained when he arrived for the trial. The Insurance Company's attorneys were granted leave to amend Claggett's answer and thereupon they filed an amended answer which denied that Claggett had been driving the automobile with Mehlin's

1. § 402 California Vehicle Code provides in part: "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages. (b) [Limitation of liability.] The liability of an owner for imputed negligence imposed by this section and not arising through the relationship of principal and agent or master and servant is limited to the amount of five thousand dollars ($5,000) for the death of or injury to one person in any one accident * * *."

2. Service of summons was not made on either of the Mehlins.

permission. The case was tried July 14, 1948, and appellee recovered a judgment against Claggett in the sum of $30,000.

Upon the trial of the instant action Mehlin testified that he was a resident of Lincoln, Nebraska; that at the time of the accident he was the owner of the automobile in question, which was registered in his name. He testified that when he came home from work on October 14, 1947, he found that his wife had left him, taking with her her personal belongings, their child, and the insured automobile; that she left without his prior knowledge or consent; that she had no permission thus to take the automobile out of the state nor to allow Claggett to drive it. The automobile had been mortgaged to a Lincoln bank. On October 23d Mehlin swore out a complaint for his wife's arrest upon a charge of removing the mortgaged automobile from the State without the consent of the mortgagee.

Mrs. Mehlin confirmed her husband's testimony. She also testified that she had left without her husband's consent or knowledge. When she reached California she stayed with members of Claggett's family, and on the occasion in question had permitted Claggett to take the automobile. She testified that when she left Nebraska she intended to stay in California permanently, and not to return. She testified that she used the automobile when at home in Nebraska, "any time I wanted the car", but said she had never driven it out of the city limits; that her husband had told her not to let any one else drive it.

At the time he denied the motion for judgment notwithstanding the verdict, the trial judge filed an opinion in which he expressed the view that the evidence failed to support a finding that the named insured expressly or impliedly permitted Claggett to use the automobile at the time of the accident, but that the evidence was sufficient to permit the jury to find that the defendant was estopped to deny coverage.[3]

Appellant asserts that the evidence was insufficient to warrant any conclusion that it was bound by either waiver or estoppel. It says that under the express terms of the policy such acts as it performed in the defense of the suit against Claggett and in negotiating for settlement could not constitute waiver or estoppel. It calls attention to the fact that the suit was brought against Mehlin as well as against Claggett and this circumstance necessitated the Company's intervention. It points to the policy provision: "Acts of the Company or its representatives in performing the duties or exercising the rights under this agreement shall not operate to waive the Company's rights nor estop it from asserting any defense under the policy." It also refers to another provision: "8. Changes. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy signed by an executive officer of the Company."

Appellant further says that there could be neither waiver nor estoppel because at the time that Gripenstraw talked to appellee's attorneys and when the first answer was filed, the Insurance Company did not have knowledge of the circumstances relating to Mrs. Mehlin's taking of the automobile without her husband's consent,

3. The court said: "However, the majority of courts that have passed upon this question hold that the insurer, by conduct such as defendant exhibited in this case, renders itself liable to the injured person if it has not seasonably preserved its rights by notice to the injured person that it contends that the claim for injuries does not come within the coverage of the policy, and that it undertakes to defend the insured against such claim without thereby relinquishing its objection on the ground of non-coverage. See 130 A.L.R. 184, and cases cited therein."

which it learned only after the action against Claggett had been tried.[4]

Appellant further contends that there can be no estoppel because the record fails to show that appellee changed her position in reliance upon any representations that the Company may have made relating to the existence of the insurance.[5]

Finally, appellant asserts that while a condition in a policy might be waived, or an insurance company might be barred by waiver or estoppel from asserting some right to forfeit a policy, that the coverage of an insurance policy cannot be extended by waiver or estoppel, but that the persons who are insured by such a policy are only those who are named or described as insured by the terms of the policy itself.

■ Turning first to the argument of appellee that there was sufficient evidence of permission, it is noted that appellee proved what would appear at first blush to be two separate and distinct admissions of the appellant that Claggett was driving the automobile with the consent of the named insured. One of these is the statement, quoted above, made by the adjuster, Gripenstraw, to the effect that "we are satisfied that Mrs. Mehlin had the permission to bring the automobile out here and that Mr. Claggett had her permission to use it." If such were the facts they would make out a case of permissive use by Claggett, for it appears to be the rule that if the owner's permittee has entrusted the automobile temporarily to another, the latter's use is deemed to be with the owner's permission. Haggard v. Frick, 6 Cal.App. 2d, 392, 44 P.2d 447, 448.[6]

The other apparent admission is the statement contained in the answer first filed in the suit against Claggett admitting the permission in the language quoted above.

Appellant asserts that neither of these statements is admissible or constitutes evidence to establish the fact of permission.[7] It is asserted that neither Gripenstraw nor the attorney who verified the answer had any power or authority to make any such admission on behalf of the appellant, and as for the admission contained in the original answer, it is asserted that such an admission in a pleading which became *functus officio* through the filing of an amended pleading, is admissible only for the purpose of impeachment and not as substantive evidence of the truth of the fact stated in the pleading. In support of this last assertion appellant cites: Kambourian v. Gray, 81 Cal.App.2d 783, 185 P.2d 27;

4. Appellee counters by asserting that such knowledge is essential only in the case of waiver, that it is not required in order to establish an estoppel. Appellee further asserts that the Insurance Company was promptly put on notice of sufficient facts to require it to make inquiry of Mehlin which would have disclosed all these circumstances, and that therefore it must be charged with knowledge of what prudent inquiry would have disclosed.

5. Appellee asserts detriment in that she could not fairly appraise the value of the settlement offers which she might have accepted had she known that insurance coverage was disputed; and she asserts further detriment by way of trouble and expense in commencing the action against Claggett and preparing it for trial.

6. This case arose under what is now § 402 California Vehicle Code, supra, note 1, making the owner of a motor vehicle liable for death or injury resulting from negligence of one using or operating the vehicle with the permission of the owner. There a father who permitted his son to use the father's automobile was held liable under the statute for injuries received in consequence of the negligent driving of the automobile by a friend of the son to whom the son gave permission to drive. The court quoted with approval the following: "Only a narrow construction would permit us now to say that an owner, placing a car in the care of members of his family to be used for their pleasure or for the family business would escape liability if wife or son or daughter should give over the wheel to the management of a friend."

7. No objection was made to the introduction in evidence of either statement. Appellant asserts that since either might be receivable in evidence for another purpose, its failure to object at the time does not prevent it from taking the position which it does here. Without determining the effect of this failure to object, we assume that the record permits appellant to make these contentions.

Gajanich v. Gregory, 116 Cal.App. 622, 3 P.2d 389; Weissbaum v. Eibeshutz, 211 Cal. 170, 294 P. 396.

Reference to Rule 43(a) of the Rules of Civil Procedure, 28 U.S.C.A., discloses that if the matter be admissible under either California law or under the "rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity", admissibility must be deemed established. We think that the statement made in the former answer was admissible as substantive evidence under the California decisions.

In the early case of Mecham v. McKay, 1869, 37 Cal. 154, it was held that a pleading which had been superseded by an amended pleading cannot be offered in evidence as an admission of a party in the *same suit*. The same rule has been stated in decisions or dicta in subsequent California cases.[8]

The standing of Mecham v. McKay, supra, and of the cases following it may be said to be in question by reason of the following more recent decisions to the contrary; Miller v. Lee, 66 Cal.App.2d 778, 153 P.2d 190; Treager v. Friedman, 79 Cal.App.2d 151, 179 P.2d 387; and Caccamo v. Swanston, 94 Cal.App.2d 957, 212 P.2d 246.

Some of the cases following Mecham v. McKay, supra, recognize the admissibility of such a superseded pleading for purposes of impeachment only. The last three cases cited hold that such a pleading may be used as an admission in the course of the trial in the same case and without any such limitation.

However, it has always been the rule of the California Courts that where a statement in a superseded pleading is sought to be introduced in *another case,* it has the same force and effect as any other admission of a party and constitutes substantive evidence. Coward v. Clanton, 79 Cal. 23, 21 P. 359, 361.[9]

The extract from the first answer in the suit against Claggett which was introduced in evidence here appears to be clearly admissible as an admission of the appellant under the rule laid down by the California court in the case last cited. It was filed in the suit against Claggett, but it was received in this suit against the Insurance Company; therefore its admissibility is not affected by such cases as Mecham v. McKay, supra, which laid down

8. Included are: Ponce v. McElvy, 51 Cal. 222; Morris v. Lachman, 68 Cal. 109, 8 P. 799; Stern v. Loewenthal, 77 Cal. 340, 19 P. 579; Ralphs v. Hensler, 114 Cal. 196, 45 P. 1062; Miles v. Woodward, 115 Cal. 308, 46 P. 1076; Williams v. Seiglitz, 186 Cal. 767, 200 P. 635; Weissbaum v. Eibeshutz, 211 Cal. 170, 294 P. 396; Gajanich v. Gregory, 116 Cal.App. 622, 3 P.2d 389; and Kambourian v. Gray, 81 Cal.App.2d 783, 185 P.2d 27. In Evans v. Daniel, 9 Cir., 289 F. 335, this court cited Mecham v. McKay, supra, but gave it a somewhat different construction.

9. "But the respondent objected to the admission of the answer on the ground that it was superseded by the filing of another answer in the case. This was no reason for excluding it as evidence. No matter if it had ceased to exist as a pleading in the cause, it was still binding upon the respondent as an admission. It is urged here that the answer was not verified, and was not signed by the respondent, but by his attorney. It is enough to say that this objection to its admission was not made in the court below, and this court will not presume, under such circumstances, that the attorney was acting without authority. * * * In our judgment it should be presumed, where a pleading is filed by the attorney of the party, that such attorney was acting within his authority, and that the pleading should be regarded as the admission of the party, subject to his right to show that as a matter of fact the pleading was not authorized by him. But as the point is not directly raised here, and a decision of the question is not necessary, we do not pass upon it. Under the objection made to it the answer should have been admitted." In accord are Tieman v. Red Top Cab Co., 117 Cal.App. 40, 3 P.2d 381; Dolinar v. Pedone, 63 Cal.App.2d 169, 146 P.2d 237; Brooks v. Brooks, 63 Cal.App.2d 671, 147 P.2d 417; Jones v. Tierney-Sinclair, 71 Cal.App.2d 366, 162 P.2d 669; McNeil v. Dow, 89 Cal.App.2d 370, 200 P.2d 859.

a ruling concerning superseded pleadings in the same case.[10]

■ We note also that this admission was made by attorneys employed by and representing the Insurance Company. The admission was made by them while performing duties for which they had been employed by this appellant. Although the answer in question was one verified by the attorney who signed it on behalf of Claggett, the fact that in filing it the lawyers were acting as attorneys and representatives of the appellant is made apparent by defendant's "Exhibit A" which was a letter prepared by the attorneys, dated July 13, 1948, addressed to them and signed by Claggett, and which states: "This is to advise you that I agree that your firm as attorneys and representatives of State Farm Mutual Auto Insurance Company may participate in any investigation, defense and/or adjustment of the case now pending * * "

We think therefore that there can be no question as to the fact that the attorneys were representing the Insurance Company; that they had authority to make the statement in question, and that the quoted statement was admissible in evidence for all purposes for which any admission of a party is receivable.

With respect to the evidence of what Gripenstraw had to say, it is asserted first, that there is no evidence that he had any authority to make such an admission on behalf of the Insurance Company, and second, if he made the statement, as claimed by appellee, it is not evidence against appellant, for he was not then in possession of the true facts relating to the circumstances of Mrs. Mehlin's departure from Nebraska.

There is no question but that Gripenstraw was at the time a claim adjuster employed by the Insurance Company and that he had been directed to talk to the attorneys for the plaintiff in the action. He testified, however, that his sole purpose at the moment was to obtain additional time in which to answer the complaint. He testified that he made no offer of settlement and had no authority to make any such offer. He testified that there was some discussion of the limits of the policy during which he declined to disclose what the amount of the policy was. He did say that some time during the conversation the sum of $7500 was mentioned, and testified that that was not the attorney's demand as the attorney was insisting upon the payment of the full policy limits.

■ Notwithstanding Gripenstraw's testimony that on the occasion in question he had been directed to limit himself to a request for an extension of time within which to plead, it is apparent that the jury had a right to believe the testimony of appellee's attorney that Gripenstraw made an offer of settlement,—in other words, that he undertook to adjust the claim and in that connection discussed the policy. We believe that a jury could well find as a fact that a person employed as a claim adjuster had at least apparent or ostensible authority to adjust claims and that such would include negotiations for settlement. Special instructions as to what he was to do on this particular occasion, not divulged by him to the other party, would not constitute a limitation of his real or apparent authority. When he was made a claim adjuster, he was given "a character" commensurate with that type of occupation, and would have all of the apparent powers usually attaching to an agent of that type. Mechem on Agency, 2nd Ed., § 709,

10. The decisions of this court are to the effect that statements made in a superseded pleading are receivable in either the same or another suit as admissions of the party making them. Where the pleading is verified by an attorney, it must be shown that his information as to the facts must have come to him only from his client, a condition that was satisfied here. See Evans v. Daniel, 9 Cir., 289 F. 335; Fidelity & Deposit Co. of Maryland v. Redfield, 9 Cir., 7 F. 2d 800; Hardy v. Commissioner of Internal Revenue, 9 Cir., 125 F.2d 863; Christensen v. Trotter, 9 Cir., 171 F. 2d 66.

710.[11] As stated in Robinson v. American Fish & Oyster Co., 17 Cal.App. 212, 219, 119 P. 388, 390: "The law will not, of course, permit a principal to escape the liability which it attaches to him by reason of such circumstances as are present here upon the plea that the agent has violated or transcended some limitation that he has secretly or without the knowledge of those with whom his agent as such is to deal placed upon the latter's authority as such agent, and in this case it will imply from the conduct of appellant authority in Junta to make the agreement into which the jury found that he entered with Meng. * * * 'Where the special character of the agency is not known, and the principal has clothed the agent with apparent powers, strangers, in dealing with the agent, may assume that such apparent powers are possessed. The principal cannot, by private communications with his agent, limit the authority which he allows the agent to assume.'" See in accord, Hope Mining Co. v. Burger, 37 Cal.App. 239, 244, 174 P. 932; Carter v. Carr, 139 Cal.App. 15, 24, 33 P.2d 852; Bridge v. New Amsterdam Casualty Co., 129 Cal.App. 365, 19 P.2d 80; Logan v. Andrews, 25 Cal.App. 2d 683, 78 P.2d 748; Syar v. U. S. Fidelity & Guar. Co., 51 Cal.App.2d 527, 125 P.2d 102.

■ If, as the jury may have believed, Gripenstraw attempted, in the exercise of his general duties, to adjust the claim by talking settlement, it could well be concluded that he was empowered, as an incident thereto, to discuss with appellee's attorney the facts and circumstances relating to the matter of permissive use. This was something which would necessarily have to be considered in discussing a settlement. A claim adjuster is not a person without implied power to talk. Talking is one of the things he is expected to do. We think that notwithstanding the agent's present disclaimer of any authority whatever, he had at least apparent authority to make the statement attributed to him, and claimed by appellee to be an admission. This would arise out of his power, under Civil Code § 2319, supra, "To do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency."

■ Appellant suggests that neither Gripenstraw's admission nor that contained in the superseded answer is evidence against appellant for the reason that when the adjuster and the attorney made these statements they did not know what they were talking about, since it was not until much later and around July 1, 1948, that the Insurance Company and its representatives learned directly from Mehlin that Mehlin's wife had taken the car out of the state without his consent. The rule is that personal knowledge of the person making an admission is immaterial. Wigmore on Evidence, 3d Ed. § 1053.

■ It therefore appears to us that this record discloses two distinct admissions that the required permission existed, both of them made by authorized agents or representatives of the Insurance Company. These admissions by themselves would be sufficient to support a finding of permission, and unless there be other evidence in the

11. "Thus if the principal has by his express act, or as the logical and legal result of his words or conduct, impressed upon the agent the character of one authorized to act or speak for him in a given capacity, authority so to speak and act, follows as a necessary attribute of the character, and the principal having conferred the character will not be heard to assert, as against third persons who have relied thereon in good faith, that he did not intend to impose so much authority, or that he had given the agent express instructions not to exercise it."

See also Cal.Civ.Code § 2316. "Actual authority, what. Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess."

§ 2317. "Ostensible authority, what. Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."

§ 2319. "Agent's necessary authority. An agent has authority: 1. To do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency * * *."

record so unquestionable and conclusive as to compel a contrary finding, the admissions would themselves at least create a conflict in the evidence which the jury alone would have to resolve. It is a settled rule that "an admission is *equivalent to affirmative testimony* for the party offering it." Wigmore on Evidence, 3d Ed. § 1048. Such is the law by statute in California. Cal.Code Civ.Proc. §§ 1832, 1850, 1870(5).

Such admissions, of course, are in no sense conclusive; they may be explained away or contradicted. Wigmore on Evidence, 3d Ed. § 1059. The Insurance Company undertook to do just that through the testimony of Mr. and Mrs. Mehlin who both said that when Mrs. Mehlin took the automobile to California she was deserting her husband, with no present intention to return.

The testimony of Mr. Mehlin, previously mentioned, which was corroborated by that of his wife, was that he returned home from work on October 14, 1947, and then learned that his wife had run off with his car and his child, taking her personal belongings with her. The automobile was mortgaged to a Lincoln bank, and upon the basis of this fact Mehlin on October 23, 1947, filed the criminal complaint against his wife. The record does not disclose all that happened thereafter except that it does appear that Mrs. Mehlin was arrested, in consequence of the complaint, some time in December; that she waived extradition and returned to Nebraska, and the complaint was dismissed, because of insufficient evidence, on January 9, 1948. Thereafter Mrs. Mehlin and her husband became reconciled and at the time their depositions were given they were again living together.

The question is whether in the light of this testimony, which was uncontradicted, the court would be obliged to credit the testimony alone and to disregard the admissions; in other words, whether the evidence required the court to hold as a matter of law that the facts were as testified by the Mehlins.

It is to be noted that Mehlin and his wife were not without motive to make it appear that Claggett was not acting with their permission. It is true that so far as liability under § 402 of the California Vehicle Code was concerned, the Mehlin's liability under that section, up to the $5000 limit there prescribed, was adequately covered by the policy in question. But Mehlin may have been actuated by other considerations. He may have had reason to be concerned about the policy covering his liability under this section, if the policy protection had to be shared with Claggett. Furthermore, the Insurance Company had notified Mehlin by letter that suit had been brought for an amount exceeding his policy limits and that therefore Mehlin might be required to pay something from his own pocket, and was at liberty to employ counsel if he so chose. It seems reasonable to suppose that when Mehlin testified, he as a layman genuinely feared the consequences to him of proof of any kind of permission, and that his wife would join in that fear. Under these circumstances, the court was not obliged to take at full face value, and as verity, the testimony of Mehlin even although it was uncontradicted. Broadcast Music v. Havana Madrid Restaurant Corp., 2 Cir., 175 F.2d 77.[12]

We think that the fact that Mehlin filed a complaint against his wife on October 23 did not conclusively require the jury to find that Mrs. Mehlin was without her husband's permission to drive the automobile when she first left. The filing of the complaint may have been initiated by something that transpired after Mrs. Mehlin had reached California. Prior to her departure she had the right to use the automobile, as she said, "Any time I wanted the car." It was apparently kept and used as a family automobile, and had been pur-

---

12. See Cal.Code Civ.Proc. § 1847: "Witness presumed to speak the truth. A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, *or his motives*, or by contradictory evidence; and the jury are the exclusive judges of his credibility." (Emphasis added.)

chased in part with money which the wife had had in the bank in her own name, and which had been sent to her by her husband while he was in the army. If when she left she was driving the family automobile pursuant to the authority she had theretofore had to drive it generally, the filing of the criminal complaint against her on October 23 would not appear in itself to be a revocation of a previous permission prior to October 31 when the accident occurred, for up to that time it does not appear that Mrs. Mehlin knew anything about the filing of the complaint.[13]

■ Since the admissions on the one hand, and the testimony of the Mehlins on the other "make a case of conflict of testimony," Hall v. Bark "Emily Banning," 33 Cal. 522, 524, it follows that "The effect of such evidence in the particular case must be determined by the jury, and their decision cannot be reviewed by an appellate court." Hyde v. Stone, 20 How. 170, 176, 15 L.Ed. 874.

Upon the questions raised by the claim of waiver and estoppel both parties have furnished us with exhaustive briefs in which counsel have ably presented a mass of authorities. A decision as to whether the trial court correctly held appellant estopped must necessarily be arrived at only after a consideration of such questions as the effect of the policy provisions against waiver and estoppel, whether the class of persons protected by such a policy may be enlarged by waiver or estoppel, the extent to which knowledge of the facts is essential to estoppel, or may be implied in respect to waiver, and whether a non-waiver clause may itself be waived. Since what we have said with respect to the existence of a conflict of evidence upon the question of permissive use makes it unnecessary to pass upon such matters, we shall refrain from any attempt to express our opinion upon

these questions of local law upon which we have been able to find no controlling decisions in either California or Nebraska.

■ Finally, it is urged that the evidence shows, without conflict, that there was a breach of a warranty of the policy to the effect that the automobile would be principally garaged and used in Lincoln, Nebraska. There would seem to be a bit of inconsistency in first urging that Mrs. Mehlin's taking the automobile to California was substantially an act of conversion on her part, and then arguing that by such act the vehicle became principally garaged in California. But passing that, we think it is by no means certain that this language of the policy was a warranty. Sutton v. Hawkeye Casualty Co., 6 Cir., 138 F.2d 781. The circumstance which we think controlling, however, is the fact that the policy clearly contemplates that the automobile may be driven anywhere in the United States or Canada. Merely driving it to California did not affect the insurance. From August 22, 1947, when the policy was issued, to October 14 thereafter, a period of 53 days, the automobile was "garaged" at Lincoln, Nebraska. If it be assumed it was "garaged" in California from arrival there, to October 31, less than 15 days, we cannot say, as a matter of law, that it had yet been "principally garaged" at any new location.

As we find that the issues were properly submitted to the jury, we find no error in the record.

Affirmed.

On Petition for Rehearing

PER CURIAM.

The appeal to this court presented but one question,—whether the evidence was sufficient to take the case to the jury. As indicated in the opinion, plaintiff claimed (1) that the automobile described in the lia-

13. Compare the rule in the analogous case of revocation of an agent's authority requiring notice to the agent. Mechem on Agency, 2nd Ed. § 624, U. S. Farm Land Co. v. Darter, 42 Cal.App. 292; 183 P. 696.

It is possible to infer that Mehlin intended that his wife should drive the automobile even after she was arrested. Mrs. Mehlin's mother was deputized to go after her and bring her back. If it was intended that the automobile be brought back also, it seems probable that Mrs. Mehlin would be the driver.

bility policy was being used with permission, and (2) that defendant was barred by waiver and estoppel from claiming want of permission as a defense. This court held there was sufficient evidence of permissive use, and therefore found it unnecessary to pass on the issue of waiver or estoppel, although the trial court's denial of a motion for judgment notwithstanding the verdict was based solely upon his opinion that waiver or estoppel had been established.

Appellant has filed a petition for rehearing stating: "If, as a matter of law, there could be no finding of waiver or estoppel as a basis of coverage, then it would have been error for the trial court to have submitted those issues to the jury. Consequently, appellant is entitled to have this court pass on the question of waiver and estoppel as long as the Court feels that the jury could have found that permission was given. Appellant's case to the jury was prejudiced by the submission to them of questions upon which they could not legally predicate a verdict."

 Where it was error to submit the issues of waiver or estoppel to the jury is not before us on this record. No such specification of error is assigned, and the statement of points relied on does not mention any such point. The instructions and objections thereto are not included in the printed record. But on taking notice of what appellant says in the quoted language, we have examined the unprinted portion of the record and note that immediately following the charge to the jury the court inquired of counsel if they had any exceptions, and both sides stated that they had none, and no objections were taken. See Rule 51, Fed.Rules Civ.Proc., 28 U.S.C.A.

 This failure to object to any instruction further discloses that had appellee, as she might have done, designated the instructions, and the waiver of objections for printing in the record, she could have contended that the court's instructions on waiver and estoppel became the law of the case, and hence that much of the argument

of appellant made to us, such as its argument that "insurance coverage cannot be extended by means of waiver or estoppel", was not available to it here. "These instructions, not having been excepted to by either party, became the law of the case, and in determining whether the evidence was sufficient to sustain a verdict for plaintiff, we must test its sufficiency by the law as announced therein." National Surety Corp. v. City of Excelsior Springs, 8 Cir., 123 F.2d 573, 577, 156 A.L.R. 422; Cf. F. W. Woolworth Co. v. Carriker, 8 Cir., 107 F.2d 689, 692.

 The argument of the petition respecting the admissibility of the former answer, that Coward v. Clanton, 79 Cal. 23, 21 P. 359, is wrongly decided, or contains dictum, or is distinguishable, does not convince us. Not only is Mecham v. McKay, 37 Cal. 154, on which petitioner relies, rapidly losing its standing in California, see Abel v. O'Hearn, Cal.App., 218 P.2d 827, but as pointed out in our opinion, note 10, the decisions of this court would admit the evidence, and hence, under Rule 43(a), it was properly received.

As for the admission of the adjuster, Gripenstraw, the authorities cited in support of a rule stated in Borland v. Nevada Bank, 99 Cal. 89, 33 P. 737, are not in point here, for if appellee's testimony is credited, Gripenstraw was at the very moment he made his declaration, engaged in negotiating a proposed settlement on behalf of appellant. "It has been decided, for example, that, when it has been shown that a person was given actual or ostensible authority to act for another in a particular matter, any declarations made by the agent at the time of the transaction of the business intrusted or apparently intrusted to him, and relating to such business, is admissible as a part of the res gestae. Hubback v. Ross, 96 Cal. 426, 430, 31 P. 353." Carter v. Carr, 139 Cal.App. 15, 24, 33 P.2d 852, 857. Cf. Mechem on Agency, 2d Ed. § 1781.

The petition for rehearing is denied.