Larry SHAW, a minor, by H. L. Shaw, next friend, Plaintiff,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, a corporation, and J. H. Carson, Defendants.

J. H. CARSON, Plaintiff,

v.

C. M. MILLER and Hartford Accident and Indemnity Company, a corporation, Defendants.

Nos. 980, 981.

United States District Court
W. D. Missouri,
St. Joseph Division.

May 11, 1959.

572

Ewing & Beavers, Maryville, Mo., for Larry Shaw and C. M. Miller.

Hull & Strong, Maryville, Mo., for Hartford Accident & Indemnity Co.

Gene Thompson, Maryville, Mo., for J. H. Carson.

H. L. Fuller, of Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for Hartford Accident & Indemnity Co.

Watkins & Watkins, St. Joseph, Mo., for C. M. Miller.

DUNCAN, Chief Judge.

These cases were brought in the State court seeking declaratory judgment to determine the respective rights of the parties under a policy of insurance issued by defendant Hartford Accident and Indemnity Company to the defendant C. M. Miller, and a truck leasing agreement between Carson and Miller. The cases were removed to this court by the defendant Hartford Accident and Indemnity Company.

Shaw is a resident of the State of Iowa, Hartford Accident and Indemnity Company is a corporation organized under the laws of the State of Connecticut, and plaintiff Carson and the defendant Miller are residents of the State of Missouri.

Although there was not complete diversity of citizenship, the court determined upon a Motion to Remand, that a separate and distinct claim or cause of action had been alleged in each instance against the resident defendant, and overruled the motion, under the provisions of § 1441(c) Title 28 U.S.C.A. Common questions of fact and law being involved in each case, they were consolidated for the purpose of trial.

C. M. Miller is engaged as a common carrier in the business of hauling livestock from Grant City to St. Joseph, Missouri. He owns and operated, among other units, a 1956 Chevrolet tractor for which Hartford Accident and Indemnity Company had issued a policy insuring Miller against loss because of liability for bodily injury and property damage arising out of the ownership, maintenance or use of such units.

Carson, a resident of Maryville, Missouri, is extensively engaged in the harvesting and curing of bluegrass seed in Missouri and other states, including the State of South Dakota. Prior to June

25, 1957, the plaintiff Larry Shaw had been in the employ of the defendant Miller in the operation of his trucks in the hauling of livestock from Grant City to St. Joseph, Missouri.

On June 25, 1957, the 1956 Chevrolet tractor was leased by Miller to J. H. Carson on a temporary basis, to be used by Carson in his seed gathering business in and around DeSmet, South Dakota. The tractor was driven by Shaw to De-Smet and used in that vicinity until July 3, 1957. On that date, while returning from a delivery trip to North Dakota, the tractor was involved in a collision north of Aberdeen, South Dakota, with an automobile driven by one Volluz. Volluz and two passengers were killed and two other passengers were injured, as a result of which actions were brought in the United States District Court for South Dakota against Miller, Carson, and Shaw, who was the driver of the tractor at the time of the collision.

One of the above cases was tried and resulted in a judgment against defendants Carson and Shaw in the sum of $10,000. Apparently the trial of the remaining cases has been deferred until the question of Hartford Accident and Indemnity Company's liability has been determined. At least, they have not yet been tried or disposed of.

Although Shaw had been in the employ of Miller prior to the leasing agreement between Miller and Carson, at the time of the collision he was in the employ of Carson and being paid by him. Notwithstanding that fact, he was driving and operating the truck at the time of the accident with the permission of Miller. Both Shaw and Miller contend that Hartford Accident and Indemnity Company is obligated under the terms of the policy to defend any action brought against either of them and to satisfy any judgment that has or may be recovered against them as a result of the accident.

Carson contends that the policy covers both of them in respect of the liability, and that it is its duty to defend the actions brought against Carson, Miller and Shaw, and that it is obligated to pay and satisfy any judgment or judgments that may be rendered against either or all of said parties.

Carson also contends that the court should determine that if he is not covered by the policy of insurance, then the truck leasing agreement between him and Miller should be cancelled because of false representations made to him by Miller with respect to the insurance coverage which induced him to enter into the lease.

It is the contention of the insurance company that, although the policy was in full force and effect as between it and Miller at the time of the accident, it is relieved of any responsibility because of violation of conditions and limitations contained in the policy. This question will be discussed later in this opinion.

It is further contended by the insurer that it owes no obligation under the terms of the policy to Carson, and that he is solely liable for any damages that may result from the actions now pending in South Dakota, but that if it should be determined that the defendant is liable under the terms of its policy insofar as Miller and Shaw are concerned, under the subrogation clause of its policy it is entitled to recover from Carson for any sum or sums which it may be required to pay.

The insurance policy as originally issued, and exclusive of any endorsements, was quite broad in its coverage. The policy was applicable to accidents which might occur while the automobile was within the United States, its territories or possessions, or Canada. There were exceptions provided under a portion of the policy entitled, "Exclusions", most of which are not in dispute and need not be considered here.

There is one exclusion, however, upon which Hartford Accident and Indemnity Company relies as a policy defense, and that is the so-called "trailer exclusion" which provides:

"This policy does not apply: * * * (c) under coverage A and C, while the automobile is used for

the towing of any trailer owned or hired by the insured and not covered by like insurance in the company; or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company."

In a further effort to limit its liability Hartford Accident and Indemnity Company appended a number of endorsements which were described as "forming a part of policy at issue". Endorsement Form A–1370, which is not in dispute, is merely a list of the automobiles covered by the policy, described by make, model and motor number.

Endorsement Form A–1113 Rev. 10'54 is entitled "Motor Carrier Automobile Liability Insurance (Farm to Market—Livestock)". It provides:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies with respect to the ownership, maintenance or use by or in behalf of the named insured of any automobile to which is applicable any motor carrier law under which the company has filed evidence of insurance in behalf of the named insured with any federal or public authority, subject to the following provisions:

"1. Application of Insurance

\* \* \* \* \* \*

"b. The insurance afforded under this endorsement applies only while the automobile is being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority under such motor carrier law."

This is hereafter designated as the "exclusive-use limitation". Similar language is also found in Endorsement Form A–1112, 3rd Revision, which is entitled "Farm to Market—Livestock". It provides:

"It is agreed that such insurance as is afforded by the policy for Bod-

ily Injury Liability, for Property Damage Liability and for Medical Payments applies with respect to the automobile described below or designated in the policy as subject to this endorsement, subject to the following provisions:

"1. The insurance with respect to any person or organization other than the named insured also does not apply, except with respect to any employee of the named insured, to any person or organization, or any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others (1) if the accident occurs while such automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority, \* \* \*."

"2. The insurance applies while the automobile is used principally within a ——— mile radius of the city or town where the automobile is principally garaged as stated in the Declarations."

One copy of the form places a 75-mile radius on one tractor and trailer, and another copy imposes a 150-mile radius on all of the other units covered by the policy at the time of issue. These will be designated as the "radius limitation".

Toward the foot of Form A–1112, 3rd Revision, the units to which the endorsement applies are listed. The 1956 tractor that was involved in the collision was not owned by Miller on the date the policy was originally issued, and therefore is not described on Form A–1112, 3rd Revision, as one of the units to which that Form is applicable.

Some two months after the policy had been issued, Miller acquired the 1956 tractor, and it was brought within the policy coverage by execution of Form A–1335, "Change, Elimination or Addition of Automobile", Division II, "Automobile Added". The purpose for which the tractor was to be used was there designated as "commercial—as amended

by Endorsement Form A–1112, 4th Revision".

The intention of Hartford Accident and Indemnity Company apparently was to limit the applicability of insurance on the new tractor in the same manner and to the same extent that the insurance on all the original units had been limited, i. e., by imposing an exclusive-use limitation and a radius limitation upon the use of the new tractor. This was to be accomplished by appending to the policy, Endorsement Form A–1112, 4th Revision, which was identical in language to the 3rd Revision of the same form. However, the agent of Hartford admittedly failed to furnish Miller with a copy of the 4th Revision, and no such copy was appended to the insurance policy.

At the time of the collision the 1956 tractor was towing a trailer that was not insured by Hartford Accident and Indemnity Company. It was, as heretofore stated, leased to Carson and was being used by Carson in his seed-gathering operations; and the collision occurred more than 150 miles from Grant City, which was designated in the policy as the place where the insured automobiles were *principally* garaged. Hartford contends that these facts constitute violations of conditions and limitations contained in the policy which relieve it of all responsibility, in that:

> "(a) The tractor described in the policy involved in such accident was being used for the towing of a trailer not covered by like insurance in the company.

> "(b) Such vehicle was not being used exclusively in the business of C. M. Miller, the named insured, and over a route C. M. Miller was authorized to serve by Federal or public authority.

> "(c) Such accident occurred while such vehicle was not being used principally within a 75-mile radius of Grant City, Missouri."

I shall consider each of these defenses separately from the standpoint first, whether the limitation or exclusion was applicable to the tractor involved in the collision, and second, if so, whether it was violated so as to relieve Hartford Accident and Indemnity Company of responsibility.

### 1. *The trailer exclusion.*

■ As shown by the provision in the policy quoted heretofore, the insurance does not apply if the automobile is used for the towing of any trailer "owned or hired" by the insured and not covered by like insurance in the company. This provision is found in the basic policy and thus clearly is applicable to the 1956 tractor. Before Hartford may rely upon this exclusion to escape responsibility, it must be determined that the trailer being towed was "owned or hired" by the *insured.*

Hartford contends, albeit faintly, that if it should be determined that Shaw was the employee of Miller (which he was not), then Miller had the right to control and the constructive custody of the trailer through Shaw, and it may be inferred that he had hired the trailer. This reasoning does not appeal to the court.

Since it was not shown that the trailer was "owned or hired" by the insured, the provision of the policy referred to by the defendant is not applicable.

### 2. *The exclusive-use limitation.*

■ This limitation is found in the policy in two places, i. e., in Endorsement Form A–1113, and in Endorsement Form A–1112, 3rd Revision. Endorsement Form A–1113 bears no language tending to indicate that it did not become applicable to the 1956 tractor. It was designated as part of the policy at issue, and does not specify the particular vehicles to which it is applicable. However, under the factual situation this endorsement does not apply to the collision that occurred. Paragraph 1a, which was omitted from the earlier quotation from this endorsement, reads:

> "a. With respect to any such liability arising out of the ownership, maintenance or use of automobiles

to which such motor carrier law is not applicable, all of the terms of the policy, exclusive of any endorsement forming a part thereof under the requirements of any such motor carrier law and exclusive of this endorsement, shall apply."

The endorsement is applicable only to vehicles which are being operated subject to some motor carrier law. At the time of the accident the tractor was not being operated subject to any motor carrier law, so this endorsement is not applicable, and in such a case by its very terms the basic policy remains in force.

The exclusive-use limitation is also found in Endorsement Form A–1112, 3rd Revision, and the 4th Revision of that form, although never appended to the policy, contains identical language.

 When the 1956 tractor was brought within the policy, its use was designated as "commercial—as amended by Endorsement Form No. A–1112, 4th Revision." The intention of Hartford obviously was to limit the use of the new tractor in the same manner as the use of the original units had been limited. Such limitation was not effectuated, however, for the reason that the agent of Hartford Accident and Indemnity Company admittedly failed to furnish Miller with a copy of the 4th Revision of Form A–1112. No such copy was appended to the insurance policy. Miller could not be bound by any restriction attempted to be incorporated into the policy when he was never given notice of such restriction.

Hartford argues that the restriction should be considered a part of the coverage of the tractor, if not from the 4th Revision of Form A–1112, then from the 3rd Revision of that form.

It is true that the 3rd Revision was designated as forming a part of the policy at issue. From this Hartford reasons that, if the 4th Revision was never made applicable to the tractor because of failure to give Miller a copy, then the 3rd Revision applies to the new tractor.

But the units to which the 3rd Revision of the form apply are specifically designated on both copies of the 3rd Revision, and they do not include the 1956 tractor.

 Even though the 3rd Revision is declared to form a part of the basic policy at issue, by thereafter designating specifically the units to which such 3rd Revision is applicable, any attempt to render it applicable to units other than those specifically designated must fail. In interpreting a contract the court will restrict the meaning or application of general words by more specific and particular descriptions of the subject matter to which they are to apply.

Furthermore, the restrictions attempted to be placed upon the tractor in question were purported to be imposed by the 4th Revision, not the 3rd Revision. It is not doubted that Hartford could have placed a similar restriction upon the new tractor by merely furnishing Miller with a copy of the 4th Revision, and thus making it a part of the contract. But this it did not do, and Miller cannot be bound by something that Hartford intended, but failed to do.

If the insurer had intended the provisions of the 3rd Revision to apply to a substituted truck, it could have so provided by its Form A–1335, "Change, Elimination or Addition of Automobile", instead of seeking to limit its coverage by the 4th Revision.

My conclusion is that, since the 4th Revision of Form A–1112 was never made applicable to the 1956 tractor, none of the restrictions purported to be placed upon the use of the tractor by that revision ever became effective. And, since the 3rd Revision by its own terms did not apply to the tractor, none of the restrictions contained therein limit the use of the tractor. The result is that the tractor is covered by the broad basic terms of the policy without restriction as to its use.

If we assume that either the 3rd or the 4th Revision of Endorsement Form A–1112 was applicable to the 1956 tractor, then Hartford is relieved of responsibility for the reason that the exclusive-use limitation found in that endorsement

clearly had been violated. The tractor was being used by Carson in his seed-gathering business at the time of the collision. He was engaged in the business of transporting property by automobile at the time the accident occurred, and the tractor clearly was not being used exclusively in the business of Miller and over a route Miller was au<sup>+</sup>horized to serve by federal or public authority.

We next come to the radius limitation found in Endorsement Form A–1112 which it is contended by the insurer relieves it of liability. The insurance is made applicable "while the automobile is used *principally* within a 75-mile radius of the city or town where the automobile is principally garaged". Admittedly, the vehicle in use was not being used within a 75 or 150 mile radius of Grant City, Missouri, at the time of the accident. The fact that it was temporarily used outside of the prescribed radius does not mean that it was not still being used *principally* within the prescribed radius, and an occasional journey beyond the radius for a brief journey is not sufficient to alter the terms of that provision of the policy. Sutton v. Hawkeye Casualty Co., 6 Cir., 138 F.2d 781; State Farm Mut. Auto. Ins. Co. v. Porter, 9 Cir., 186 F.2d 834, loc. cit. 844, 52 A.L.R.2d 515.

It is, therefore, my conclusion that none of the defenses raised by the insurer relieves it of responsibility to Miller.

The question remains, however, as to whether or not the insurer is also responsible to either Shaw or Carson, or both. Under the provisions of the policy entitled "Insuring Agreements", Part III, it is provided:

"Definition of Insured: (a) with respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

In view of the fact that at the time of the accident Shaw was operating the motor vehicle with the consent of Miller, under the above provisions, Shaw would also be protected to the same extent as Miller. Since Carson was a person "responsible for the use" of the tractor, under the terms of his lease he would likewise be covered by the provisions of the policy.

The parties hereto may submit form of decree in accordance herewith, within ten days.